2005 ND 127

**Gene WEINREIS, Donnell Michels, and Badlands Flight Group, Inc., Plaintiffs and Appellees**

v.

**Stephen W. HILL, Defendant**

and

**AeroLease of America, Inc., Defendant and Appellant.**

No. 20040305.

Supreme Court of North Dakota.

July 13, 2005.

Michael J. Maus, Hardy, Maus & Nordsven, P.C., Dickinson, ND, for plaintiffs and appellees.

Lawrence A. Dopson, Zuger Kirmis & Smith, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]  AeroLease of America, Inc. appealed a trial court judgment that it was not a good-faith purchaser of an airplane. We hold the district court did not consider or at least did not address the apparent or ostensible authority of the seller and we reverse the trial court's judgment and remand for further proceedings.

[¶ 2]  Three individuals, Gene Weinreis, Donnell Michels, and Stephen Hill, formed a North Dakota corporation named Badlands Flight Group, Inc. Badlands Flight purchased a Beechcraft airplane shortly after its incorporation.  Stephen Hill executed a purchase agreement to obtain the aircraft and listed himself as president of Badlands Flight. The aircraft cost $147,500.  Subsequently, Hill contacted AeroLease, who works with financially dis-

tressed borrowers, to arrange financing with regard to the plane.  AeroLease's president is Stanley Shaw.  Under the terms of the financing arrangement, AeroLease purchased and acquired title to the plane.  However, Badlands Flight maintained physical control of the plane and leased it from AeroLease.  Badlands Flight obtained a single cash payment of $65,000 and continued use of the plane during a 12–month lease in exchange for transferring the plane's title and making monthly lease payments of $1,415 to AeroLease.  Badlands Flight also had the right to reacquire the airplane title by repaying $70,887, which represented the initial loan balance plus certain additional fees.  The sale-and-leaseback transaction was executed through a purchase proposal, bill of sale, and aircraft lease.

[¶ 3]  Hill made the first few monthly lease payments on time, but he soon defaulted.  AeroLease unsuccessfully attempted to repossess the airplane.  Weinreis and Michels claimed they had no knowledge of Hill's transaction with AeroLease and had not authorized Hill to enter into any such sale or financing arrangement. Weinreis, Michels, and Badlands Flight ("Badlands Flight") sued Hill and AeroLease.

[¶ 4]  Badlands Flight's complaint alleged Hill and AeroLease committed fraud, engaged in racketeering and a civil conspiracy, and breached their duty of good faith and fair dealing.  Badlands Flight highlights the numerous, and often contradictory, versions of the bills of sale and aircraft leases executed between Hill and AeroLease.  Badlands Flight points out AeroLease remitted the initial cash payment directly to Hill's personal accounts, rather than a Badlands Flight corporate account.  Badlands Flight claims AeroLease did not inquire into whether Hill had authority to sell the aircraft or

whether there were other stockholders in the corporation. AeroLease did not require a seller's attorney opinion or a corporate resolution from Badlands Flight authorizing the sale of the aircraft. Finally, Badlands Flight argues the financial terms of the sale-and-leaseback transaction are indicative of a lack of good faith.

[¶ 5] AeroLease answered the complaint by asserting it relied in good faith on the representations made by Stephen Hill, namely that Hill was the president of Badlands Flight and was authorized to conduct business on behalf of the corporation. AeroLease argues Weinreis and Michels relied on Hill to draft and file Badlands Flight's corporate documents and allowed Hill to control corporate finances. AeroLease notes two title documents listed Badlands Flight as the owner of the aircraft, with Stephen Hill being named the president of Badlands Flight. AeroLease contends it was not relevant that Hill requested the initial purchase payment be deposited into two non-corporate accounts because this is a common occurrence when dealing with financially distressed borrowers who frequently need to satisfy third-party obligations. AeroLease further contends the irregularities that might have occurred in the successive drafts of the bills of sale and aircraft leases were simply necessary in order to embody the transaction contemplated by AeroLease, i.e., a sale-and-leaseback arrangement between AeroLease and Badlands Flight, by its president, Stephen Hill. AeroLease asserts it was not required to obtain a corporate resolution from Badlands Flight or search for other Badlands Flight shareholders whose acquiescence to the transaction might have been required because Hill, as one exercising the functions of a corporate president, possessed the authority to bind Badlands Flight. Finally, AeroLease argues the terms of the sale-and-leaseback transaction are consistent with its ordinary course of business in dealing with financially distressed borrowers.

[¶ 6] Badlands Flight sought to quiet title to the aircraft in its favor by having the district court impose a constructive trust. Following a bench trial, the trial court found AeroLease was not a good-faith purchaser and would be unjustly enriched if its contract was enforced.

I.

[¶ 7] In the district court's memorandum, which contained the reasoning behind the court's judgment, the trial judge stated the following conclusions of law:

Based on the [findings of fact], the Court concludes Hill was not the duly elected president of Badlands Flight Group, and he had no authority to sell the 1972 Beechcraft 95–B55 Baron airplane or the additional engines. In addition, all monies paid by AeroLease were paid to Hill or for Hill's benefit, and Badlands Flight Group received no benefit from this transaction. Considering the problems with the documentation AeroLease had received, together with AeroLease paying all consideration to Hill and not to Badlands Flight Group, the Court concludes AeroLease was not a good faith purchaser. Hill's actions in selling the aircraft constituted fraud, and AeroLease would be unjustly enriched at Badlands Flight Group's expense, and it would be inequitable for AeroLease to retain the airplane. Therefore, AeroLease is required to reconvey the airplane and engines to Badlands Flight Group.

Particularly relevant to our analysis are the trial court's findings that:

Badlands Flight Group did not hold regular meetings, elect officers, adopt by-

laws or issue stock until after the issues in this lawsuit came to light.

. . . .

AeroLease did not ask or inquire as to whether Hill had authority to sell the airplane or whether there were other stockholders in the corporation. Aero-Lease did not require a corporate resolution authorizing the sale of the aircraft or a seller's attorney opinion, nor did it review the corporation's bylaws for restrictions on the sale of the aircraft.

. . . .

Weinreis and Michels were not aware of the sale of the aircraft by Hill to AeroLease and did not authorize or approve the sale of the aircraft.

[¶ 8] The district court's discussion of Hill's lack of actual authority to enter into the sale-and-leaseback transaction on behalf of Badlands Flight does not address whether Stephen Hill possessed apparent or ostensible authority to bind Badlands Flight.

■ [¶ 9] Badlands Flight argues apparent authority was not raised at the trial court. But, AeroLease's answer, cross-claim, and post-trial brief, and the evidence adduced from depositions and the bench trial, sufficiently raised the issue of apparent authority. Furthermore, given the trial court's reliance on actual authority in reaching its judgment, the trial court should examine the intimately related concept of apparent or ostensible authority.

■ [¶ 10] The party alleging the existence of agency based upon ostensible authority has the burden of proving agency by clear and convincing evidence. *Transamerica Ins. Co. v. Standard Oil Co.*, 325 N.W.2d 210, 214 (N.D.1982); *Farmers Union Oil Co. of Dickinson v. Wood*, 301 N.W.2d 129, 133–34 (N.D.1980). Ostensible or apparent authority "is such as the principal intentionally or by want of ordi-

nary care causes or allows a third person to believe the agent to possess." N.D.C.C. § 3–02–02. "A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof." N.D.C.C. § 3–03–03.

[¶ 11] Here, there is evidence Badlands Flight "intentionally or by want of ordinary care" caused AeroLease to believe Hill was authorized to enter into the sale-and-leaseback arrangement. Weinreis and Michels permitted Hill to initially acquire the Beechcraft airplane. As part of this acquisition, Hill executed a purchase agreement as the president of Badlands Flight. Weinreis and Michels seemingly never inspected this document or objected to Hill's representation. And, because of this purchase agreement, two title searches, one of which relied on Federal Aviation Administration registration records, revealed Hill to be the president of Badlands Flight. "In the absence of an election or appointment of officers by the board, the individual or individuals exercising the functions of the principal officers of the corporation are deemed to have been elected to those offices." N.D.C.C. § 10–19.1–56. And, unless otherwise provided by the corporation, a president shall "[s]ign and deliver in the name of the corporation, any deeds, mortgages, bonds, contracts, or other instruments pertaining to the business of the corporation." N.D.C.C. § 10–19.1–53(1)(d). Hill also had control over the corporate checkbook, which Weinreis and Michels did not inspect. Hill was the person responsible for drafting Badlands Flight's corporate documents and filing these documents with the North Dakota Secretary of State. When these facts are coupled with Hill's representations to

Stanley Shaw, a viable question as to apparent authority arises.

[¶ 12] Our discussion of these facts is simply to explain our conclusion that the trial court needed to address Hill's apparent authority to bind Badlands Flight. We neither resolve this issue on appeal nor attempt to influence the trial court on remand.

[¶ 13] Rather, against the backdrop of this opinion and its own analysis of apparent authority, the trial court will have the opportunity to re-examine its findings regarding AeroLease's lack of good faith. *See Boumont v. Boumont*, 2005 ND 20, ¶ 17, 691 N.W.2d 278 (a trial court can reconsider previous findings and conclusions in light of subsequent appellate pronouncements).

[¶ 14] We do not consider other issues, such as the applicability of North Dakota's enactment of the Uniform Commercial Code and its relationship with other areas of substantive law, which were raised for the first time on appeal. As we have stated, "[o]ur function is one of review, rather than initial determination." *Christl v. Swanson*, 2000 ND 74, ¶ 14, 609 N.W.2d 70. The trial court may consider such matters on remand if the need arises.

[¶ 15] We reverse the trial court's judgment and remand for further proceedings.

[¶ 16] CAROL RONNING KAPSNER, DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.