2006 ND 180

**MOUNTRAIL BETHEL HOME,**
**Plaintiff and Appellant,**

v.

**Colin LOVDAHL, Defendant,**

and

**Bonnie Lovdahl, Defendant**
**and Appellee.**

**No. 20060002.**

Supreme Court of North Dakota.

Aug. 16, 2006.

Peter H. Furuseth, Furuseth Law Firm, P.C., Williston N.D., for plaintiff and appellant.

Jason R. Vendsel, McGee, Hankla, Backes & Dobrovolny, Minot, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]  Mountrail Bethel Home ("MBH") appealed from a district court judgment dismissing its claim against Bonnie Lovdahl for payment of nursing home services provided to Colin Lovdahl.  We conclude the district court's findings are insufficient to determine whether there was a contract between Bonnie Lovdahl and MBH, and we reverse the judgment and remand for further proceedings.

I

[¶ 2]  Bonnie and Colin Lovdahl were married on November 28, 1964.  In November 1999, Colin Lovdahl suffered a severe stroke, and in December 2000, he began residing at MBH, a nursing home.  Bonnie Lovdahl signed an "Admission Agreement" that set out the terms of Colin Lovdahl's admission to MBH.  Bonnie Lovdahl testified that she signed the Admission Agreement on her husband's behalf and at his request, and an MBH social worker also testified that Colin Lovdahl asked his wife to sign the agreement for him.  At the time of his admission, Colin Lovdahl qualified for Medicaid, which paid the entire monthly cost of his care, except for a private room charge that Bonnie Lovdahl paid.

[¶ 3]  On November 15, 2000, shortly before Colin Lovdahl was admitted into the nursing home, he transferred all of his real property interests to Bonnie Lovdahl by a quit claim deed.  Bonnie Lovdahl testified that she informed the Medicaid eligibility workers about the property transfer when she applied for Medicaid for Colin Lovdahl.  On May 30, 2001, Bonnie Lovdahl transferred all the real property she had acquired from Colin Lovdahl to their children by means of a warranty deed, reserving a life estate for herself.

[¶ 4]  In April 2002, Bonnie and Colin Lovdahl were divorced.  Colin Lovdahl was still living at MBH, and his account was current with no amount due.  The divorce decree did not mention the MBH contract or who would be responsible for any future debts to MBH. Each party was awarded the personal property in their possession at the time of the divorce, and the decree did not mention any interest either party had in any real property.

[¶ 5]  Before  the  divorce,  Bonnie Lovdahl was authorized to act under a power of attorney for Colin Lovdahl, and

after the divorce, that authority was transferred to the Lovdahls' daughter. After the divorce, Bonnie Lovdahl also stopped paying Colin Lovdahl's private room charge. In June 2002, Medicaid stopped paying for Colin Lovdahl's care after determining he was no longer eligible for the program because he did not receive any of the available assets in the divorce. Notice of Colin Lovdahl's ineligibility was sent to his daughter. Between June 2002, and December 2002, MBH did not receive any payments for Colin Lovdahl's care, and the amount due for those months totaled $30,828.03. MBH sent all bills and correspondence about Colin Lovdahl's account to his daughter because MBH had been notified that she was authorized to act for him under a power of attorney. MBH did not attempt to collect payment for Colin Lovdahl's care from Bonnie Lovdahl or give her notice that his account was past due.

[¶ 6] In December 2002, Bonnie Lovdahl hired an attorney for Colin Lovdahl to help him become eligible for Medicaid again. The attorney contacted MBH to discuss Colin Lovdahl's eligibility, and the attorney and MBH discussed payment of the unpaid portions of Colin Lovdahl's account, including whether Bonnie Lovdahl would assume responsibility for the debt and sell some real estate to pay the debt. Bonnie Lovdahl testified that she fired the attorney after the attorney suggested she accept responsibility for the debt. On December 27, 2002, Colin Lovdahl again became eligible for Medicaid, and all the nursing home expenses he incurred after that day were paid in full.

[¶ 7] In February 2003, MBH sent Bonnie Lovdahl a letter stating it believed she was responsible for the unpaid amounts on Colin Lovdahl's account under the divorce decree. In October 2004, MBH sued Colin and Bonnie Lovdahl, alleging the Lovdahls contracted with MBH for nursing home services and seeking $35,626.57 for breach of contract. MBH also argued that if Colin Lovdahl would have received a fair share of the parties' assets in the divorce he would have been able to pay the nursing home bill. In November 2004, a default judgment was entered against Colin Lovdahl, but he had died and his estate did not have any assets to satisfy the debt. After a trial on MBH's contract claim against Bonnie Lovdahl, the district court found Bonnie Lovdahl was not liable for the unpaid nursing home expenses because any possible obligation Bonnie Lovdahl had to pay for Colin Lovdahl's nursing home care did not survive the divorce. The court also found it could not question Medicaid's eligibility determinations or "undo" the divorce.

II

[¶ 8] MBH argues the district court erred in failing to find an enforceable contract between MBH and Bonnie Lovdahl. MBH claims that the language of the Admission Agreement clearly provides that Bonnie Lovdahl signed the agreement as the responsible party and was aware she would be obligated to pay any portion of the nursing home expenses Medicaid did not cover. MBH also argues her obligation did not terminate when the Lovdahls divorced. MBH cites N.D.C.C. §§ 14–07–08(3) and 14–07–10, which are the statutes that set out spouses' mutual liability for certain debts, in support of its claim that Bonnie Lovdahl is liable for Colin Lovdahl's nursing home debt.

[¶ 9] Bonnie Lovdahl argues the district court correctly concluded that she was not liable for the debts Colin Lovdahl incurred after their divorce. She also claims the district court implicitly found there was no contract between MBH and Bonnie Lovdahl.

[¶ 10] The issue before the district court was whether there was a contract between Bonnie Lovdahl and MBH for nursing home services for Colin Lovdahl. After making detailed findings of fact, the district court decided:

the Court finds that there is no basis for holding Bonnie liable for the cost of Colin's post-divorce nursing home care at MBH. *If* Bonnie's signing of the Admission Agreement somehow obligated Bonnie to pay for the cost of Colin's care, that obligation terminated upon the parties' divorce—and, in any event, the evidence is clear that: (a) the cost of Colin's care was being paid by Medicaid at the time of the divorce; (b) Colin's account with MBH was current at that time; and, (c) the same did not become delinquent until *after* the divorce Judgment was entered.

. . . .

Once Colin became a self-pay resident, it was incumbent upon MBH to ascertain how and by whom the cost of his care was to be paid—and preferably sooner rather than later, so as to avoid the situation MBH now finds itself in. While this is not meant to be critical of MBH's decision-making process in this matter—and perhaps MBH was indeed "too nice" to Colin and the Lovdahl family in terms of how MBH dealt with this situation—the fact remains that MBH was in a position to mitigate its damages, but waited several months before deciding (apparently) to discharge Colin for non-payment. While the Court is by no means unsympathetic to MBH's plight, the foregoing analysis demonstrates that MBH's claim against Bonnie must be *dismissed.* (Emphasis in original.)

[¶ 11] The district court did not make any findings about whether a contract existed between MBH and Bonnie Lovdahl. " 'To create an enforceable contract, there must be a mutual intent to create a legal obligation.' " *Lenthe Invs., Inc. v. Service Oil, Inc.,* 2001 ND 187, ¶ 9, 636 N.W.2d 189 (quoting *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.,* 541 N.W.2d 432, 434 (N.D.1995)). A court may consider the parties' conduct to determine the parties' intent. *See Johnson Const., Inc. v. Rugby Mun. Airport Authority,* 492 N.W.2d 61, 66 (N.D.1992). "It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties." *Amann v. Frederick,* 257 N.W.2d 436, 439 (N.D. 1977). Whether a contract exists is a question of fact, which we review under the clearly erroneous standard. *Lenthe,* at ¶ 7. " '[A] finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.' " *Id.* (quoting *Lonesome Dove Petroleum, Inc. v. Nelson,* 2000 ND 104, ¶ 15, 611 N.W.2d 154). A district court must state its findings of fact and conclusions of law with sufficient specificity to afford us a clear understanding of the court's decision. *Radspinner v. Charlesworth,* 346 N.W.2d 727, 730 (N.D.1984).

[¶ 12] The evidence before the court included the Admission Agreement signed by Bonnie Lovdahl as "resident or responsible party," Bonnie Lovdahl's testimony that she signed the agreement on behalf and at the request of her husband, and testimony from the MBH social worker who assisted Bonnie Lovdahl in filling out the admission forms. There was also testimony from the MBH administrator regarding the home's billing practices. The administrator testified MBH was aware of the divorce and had received notice that Bonnie Lovdahl no longer had authority to act under a power of attorney for Colin

Lovdahl, MBH did not send Bonnie Lovdahl a bill for the unpaid amounts until after Colin Lovdahl became eligible for Medicaid again, and how MBH attempted to collect the unpaid amount. There was sufficient evidence before the district court to decide whether a contract existed between MBH and Bonnie Lovdahl, but the court did not make a finding on this issue. If, as Bonnie Lovdahl argues, the court implicitly found a contract did not exist, the court's findings are not adequate.

[¶ 13] If a contract did exist between Bonnie Lovdahl and MBH, we do not agree with the district court's conclusion that any obligation Bonnie Lovdahl had to pay for the nursing home services terminated upon the Lovdahls' divorce. The court failed to cite any authority for its decision. The court's findings indicate it may have relied on N.D.C.C. §§ 14–07–08(3) and 14–07–10 as the basis for its finding that Bonnie Lovdahl was no longer obligated to pay for Colin Lovdahl's care after the divorce. The court said:

> The two (2) statutes upon which MBH relies in support of its claim, N.D.C.C. 14–07–08(3) and N.D.C.C. 14–07–10, are not helpful to MBH under the facts of this case.... While the Admission Agreement *could* be construed as creating a contractual obligation on the part of Bonnie to pay for nursing home care provided in behalf of Colin, *no debt* for such care existed at the time of the parties' divorce—all of the charges for nursing home care which are at issue in this case were incurred *after* the parties' divorce. While ex-spouses may be liable post-divorce for certain debts incurred *during the marriage,* ex-spouses are generally not liable post-divorce for debts incurred *after the divorce.* (Emphasis in original.)

[¶ 14] The court's reliance on those statutes would arguably be correct if those statutes were the sole basis MBH was relying on to establish Bonnie Lovdahl's liability. Section 14–07–08(3), N.D.C.C., states, "[t]he husband and wife are liable jointly and severally for any debts contracted by either, while living together, for necessary household supplies of food, clothing, and fuel, medical care, and for shelter for themselves and family, and for the education of their minor children." Similarly, N.D.C.C. § 14–07–10 states,

> [t]he parties to a marriage are mutually liable to any person who in good faith supplied either party with articles necessary for their support. Such persons may recover the reasonable value from either party except in the cases when by law one party is not liable for the support of the other.

Under those statutes, a former spouse may be liable for some debts her ex-spouse incurred during the marriage, but a former spouse is generally not liable for the debts her ex-spouse incurs after the marriage has ended.

[¶ 15] Here, MBH asked the court to find the written Admission Agreement, which Bonnie Lovdahl signed, was a contract between Bonnie Lovdahl and MBH. MBH sought to hold Bonnie Lovdahl liable for Colin Lovdahl's nursing home care, not because she was Colin Lovdahl's spouse at the time of the contract, but because she was a direct party to the contract for the nursing home services. Sections 14–07–08(3) and 14–07–10, N.D.C.C., create liability for certain debts for a spouse who is not a direct party to a contract. When one spouse is a party to a contract, her liability does not terminate simply because she is no longer married to the person the contract benefits.

[¶ 16] Moreover, if she was a party to the contract, we have found no other basis to say Bonnie Lovdahl's obligation terminated when the Lovdahls divorced. The

divorce decree does not mention the nursing home contract, or state that all further debts incurred by each party are the responsibility of that party. The terms of the Admission Agreement do not state that the agreement terminates if the Lovdahls divorced. Nor do we find any case law to support the court's finding that a former spouse, who is a direct party to a contract that benefits an ex-spouse, is no longer bound by that contract upon divorce. The district court did not make any findings about whether Bonnie Lovdahl terminated the contract, if one existed, according to its terms. If Bonnie Lovdahl and MBH had a contract for nursing home services, we have found no legal authority to support a claim that the Lovdahls' divorce terminated her obligation under the contract. If Bonnie Lovdahl signed the Admission Agreement solely on Colin Lovdahl's behalf and is not a party to the agreement, then she cannot be held responsible for any unpaid amounts incurred after the divorce.

[¶ 17] The issue before the district court was whether a contract existed between MBH and Bonnie Lovdahl, and the court failed to make any findings on this issue. On remand, the district court must address whether a contract existed between Bonnie Lovdahl and MBH. *Cf. Weinreis v. Hill*, 2005 ND 127, ¶ 12, 700 N.W.2d 692 (remanded after an issue was raised and evidence was presented, but the court did not address the issue). We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

[¶ 18] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.