# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 40084 and 40106

ADA COUNTY and THE BOARD OF ADA
COUNTY COMMISSIONERS,

    Plaintiffs-Respondents,

v.

CITY OF GARDEN CITY, by and through
THE GARDEN CITY COUNCIL; and CITY
OF MERIDIAN, by and through THE
MERIDIAN CITY COUNCIL,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2014 Term

2014 Opinion No. 7

Filed: February 7, 2014

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, Ada County. District Judges of the Fourth Judicial District sitting en banc.

The appeal is <u>dismissed</u>.

Moore & Elia, LLP, Boise, for appellant City of Meridian. Michael W. Moore
argued.

Garden City Attorney's Office, Garden City, for appellant City of Garden City.
Frank Walker argued.

Greg H. Bower, Ada County Prosecuting Attorney, Boise, for respondents.
Theodore E. Argyle argued.

---

J. JONES, Justice

In 1994, an en banc panel of the district judges of the Fourth Judicial District ordered Garden City and Meridian (the Cities) to provide suitable and adequate quarters for the magistrate's division of the Fourth Judicial District (1994 Order). In addition to providing quarters, the Cities were ordered to provide for the equipment, staff, supplies, and other expenses necessary for the quarters to function properly. The Cities have never complied with the order. In 2010, Ada County brought a declaratory action asking the district judges to find that the 1994 Order is still valid and to require the Cities to comply with it. The Cities responded by filing a motion to vacate the 1994 Order, claiming that the order was invalid because it was entered on an *ex parte* basis. The en banc panel dismissed Ada County's complaint, holding that a declaratory

1

judgment action is not the appropriate means to determine the validity of the 1994 Order. The panel also denied the Cities' motion to vacate on the grounds that before the 1994 Order was entered, the Cities had received all the process to which they were entitled. The Cities appealed.

# I.
# BACKGROUND

The Idaho Legislature enacted legislation in 1969 to restructure Idaho's court system. Among other things, the legislation combined the functions of probate courts, police courts, justice of the peace courts, and various other lower courts into a single magistrate's division. *City of Boise v. Ada Cnty.*, 147 Idaho 794, 798, 215 P.3d 514, 518 (2009) (citing 1969 Idaho Sess. Laws chs. 100–28, pp. 344–95; I.C. § 1–103; and I.C. § 1–2201). The reform required each county to provide "quarters for the magistrate's division of the district court, including the facilities and equipment necessary to make the space provided functional for its intended use, and [to] provide for the staff personnel, supplies, and other expenses of the magistrate's division." I.C. § 1–2217. Further, "upon order of a majority of the district judges" in its judicial district, a city must provide such quarters, facilities, equipment and expenses for a magistrate's division. I.C. § 1–2218. "The costs incurred by a county or a city in providing facilities for the magistrate's division are offset through the apportionment" of court-imposed fees. *City of Boise*, 147 Idaho at 798, 215 P.3d at 518 (citing § 31–3201A).

*City of Boise* described the Fourth Judicial District's implementation of the reform legislation as follows:

> On the day the court reform legislation took effect, January 11, 1971, the district judges of the Fourth Judicial District entered an order requiring Boise City to provide a magistrate's division of the district court. The order stated:
>
>> It is hereby Ordered that, pursuant to Section 1–2218, Idaho Code, the City of Boise, Idaho, shall provide suitable and adequate quarters for two magistrates of the Fourth District Court Magistrates Division, including two courtrooms with related facilities and equipment necessary to make the space provided functional for its intended use, and the necessary supplies and non-judicial staff personnel to operate said courts.
>
> To comply with the order, Boise City established magistrate court facilities in an old fire station on Kootenai Street in Boise. . . .
>
> The City's magistrate facilities remained on Kootenai Street until a new facility was opened in August 1981. Construction of the new facility was prompted by an order the district judges of the Fourth Judicial District issued on October 9, 1980. The

2

1980 Order provided:

> Pursuant to the authority of section 1–2218, Idaho Code, the City of Boise City, Idaho, be, and
>
> HEREBY IS ORDERED to provide suitable and adequate quarters for a Magistrate's Division of the District Court, including the facilities and equipment necessary to make the space provided functional for its intended use, and shall provide for the staff, personnel, supplies, and other expenses of the Magistrate's Division.

Boise City's new facility—the Barrister facility—consisted of five courtrooms and various equipment, staff, and supplies. By 1983, all misdemeanor and infraction cases filed by Boise City, Ada County, the Idaho State Police, Idaho Fish and Game, and the cities of Meridian, Garden City, Kuna, and Eagle were processed at the Barrister facility. . . .

Boise City initially paid for all of the personnel, equipment, and supplies at the Barrister facility. Over time, however, Ada County began to supplement the Barrister personnel with its own employees. In addition, the Fourth Judicial District Trial Court Administrator began seeking voluntary contributions from other cities within Ada County to help fund the Barrister facility. When the mayors of two of those cities—namely, Garden City and Meridian—declined to contribute, Ada County and Boise City filed a joint petition asking the district judges of the Fourth Judicial District to order contribution.

*Id.* at 799–800, 215 P.3d at 519–20.

On August 12, 1994, the district judges determined that "the volume of work generated by the processing of citations and complaints through the Magistrate Division of the Fourth District have reached such levels that it is no longer reasonable for the City of Boise and Ada County to bear sole financial responsibility for the processing of citations and complaints issued by other municipalities." Therefore, the panel issued the 1994 Order, requiring Meridian and Garden City to "provide by October 1, 1994 suitable and adequate quarters for the magistrate's division of the Fourth Judicial District, including the facilities and equipment necessary to make the space provided functional for its intended use, and [to] provide for the staff personnel, supplies and other expenses of the magistrate's division." To date, neither Garden City nor Meridian has complied with the 1994 Order.

Nevertheless, Ada County moved forward with plans to construct a new courthouse:

In 1998, Ada County began developing plans for a new Ada County Courthouse and Administration Building. The building was designed to house all Fourth District Court functions, except juvenile proceedings. Consequently, the building would eliminate the need for Boise City's Barrister facility. . . .

> Construction of the new Ada County Courthouse and Administration Building was substantially completed in January 2002. By February 2002, all of the functions of the magistrate's division, excluding only juvenile proceedings, were consolidated in the new facility. Since that time, the functions previously housed at the Barrister facility have remained in the new courthouse.

*City of Boise*, 147 Idaho at 800, 215 P.3d at 520. Garden City and Meridian currently utilize the magistrate's division facilities and services provided by Ada County, but do not pay for any portion of the costs for the same.

In July of 2010, Ada County contacted the mayors of the Cities and stated that it "was unable to continue providing Magistrate Court Services without payment from [the Cities] as required by the August 12, 1994 Order." Both cities rebuffed Ada County's demand. In December of 2010, Ada County brought a complaint against the Cities seeking declaratory relief. In 2011, the Cities filed a motion to vacate the 1994 Order. In 2012, an en banc panel of district judges of the Fourth Judicial District dismissed Ada County's complaint because it determined that a declaratory judgment action was "not the appropriate mechanism to consider the issues" raised by Ada County. The panel also denied the Cities' motion to vacate the 1994 Order. The panel then ordered the Trial Court Administrator to meet with representatives from the Cities "to prepare a plan and a schedule on how the Cities will comply with the 1994 Order." The panel entered a final judgment dismissing the case and the Cities appealed.

## II.
## THE APPEAL DOES NOT PRESENT A JUSTICIABLE CONTROVERSY.

The Cities assert that the 1994 and 2012 en banc panels erred by failing to afford them adequate procedures to safeguard their interests. In particular, they point out that they received no opportunity to appear and be heard before entry of the 1994 Order. Boiled down to its essence, the thrust of the Cities' case is that the 1994 Order was entered in violation of their procedural rights and they seek a declaration that it is invalid.

The difficulty with the Cities' case is that the record does not disclose that they have suffered any harm as a result of the 1994 Order in the almost 20 years from the date of its entry. They have not been required to make any expenditures or to construct any facilities pursuant to the 1994 Order. Although the 1994 Order requires them to provide quarters and facilities for the magistrate's division and Ada County has sought payment for their use of the county courthouse, the Cities have not been required to pay one penny or to provide any quarters or facilities for a magistrate's division. Furthermore, there is no plan, proposal, or schedule from any interested

4

party regarding what the Cities must, might or could do to comply with the 1994 Order. Therefore, we are not presented with a justiciable controversy.

In *Harris v. Cassia Cnty.*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984), this Court stated a general rule that "a declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists." The elements of a justiciable controversy include the following:

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Wylie v. State, Idaho Transp. Bd.*, 151 Idaho 26, 31, 253 P.3d 700, 705 (2011) (quoting *Idaho Schools for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 281−82, 912 P.2d 644, 649−50 (1996)).

Ripeness is a subcategory of justiciability. *Id.* A case is not justiciable if it is not ripe. *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002). "The traditional ripeness doctrine requires a petitioner or plaintiff to prove 1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication." *Id.* In *Noh*, the Court was presented with the issue of whether a proposition that had been qualified to appear on the ballot in a general election violated the Idaho Constitution. *Id.* The Court stated that when the case was brought, however, there was no "real controversy" because the proposition was "simply a proposal." *Id.* Since the proposition had not yet become law, there was "no present need for adjudication." *Id.* Indeed, if the proposition did not pass, there would be no need for an adjudication at all. *Id.* For that reason, the case did "not meet the elements of the traditional ripeness test." *Id.*

Here, the 2012 panel merely resuscitated the dormant 1994 Order by ordering the Trial Court Administrator to meet with the Cities "to prepare a plan and a schedule on how the Cities will comply with the 1994 Order." The obvious intent was to get the ball rolling to see if some plan could be devised. There is no indication what was to be included in the plan, what the Cities might have to construct or contribute, and how the plan might be enforced. Without any of this information, the case is simply not ripe for determination.

5

Because the Court does not have a justiciable controversy before it, we dismiss the appeal. However, because it is rather apparent that our ruling will not end this dispute, we deem it appropriate to address the procedure to be employed in the event action is taken to compel the Cities' compliance with the 1994 Order.

As we noted in *City of Boise*, "[t]he Legislature did not specify the procedures to be used in considering, issuing, modifying, or vacating" orders issued by district judges pursuant to I.C. § 1-2218. *Id.* at 802, 215 P.3d at 522. However, "this Court has the inherent authority, made especially clear by . . . Art. V, Section 2 of the Idaho Constitution, to make rules governing procedure in the lower courts of this state." *Id.* (quoting *State v. Griffith*, 97 Idaho 52, 58, 539 P.2d 604, 610 (1975)). In recognition of this Court's inherent power to fashion procedural rules, the Legislature enacted I.C. § 1-1622, recognizing that the Court may adopt "any suitable process or mode of proceeding" in carrying out its jurisdiction. *City of Boise*, 147 Idaho at 803, 215 P.3d at 523. Although *City of Boise* did not spell out the process to be employed in a proceeding under I.C. § 1-2218, the Court indicated that a party having "a substantial financial stake" in such an order must have "the opportunity to appear and be heard." *Id.* It should be pointed out that the Court did not say cities and counties have due process rights, as individuals do, nor did we hold that a city or county must be given the opportunity to appear and be heard prior to the issuance of an order commencing a proceeding under I.C. § 1-2218. Indeed, in *City of Boise*, we noted that such a proceeding is "commenced" by the issuance of the district judges' order. *Id.* at 802, 215 P.3d 522. The requisite process must be afforded before a party's financial stake may be impacted. In order for a party to such a proceeding to receive suitable process, it must have the opportunity to appear and be heard before being required to provide any specific quarters, facilities, equipment or expenses.

Again, this Court has the inherent power to determine what constitutes "suitable process or mode of proceeding" in a matter of this nature. The Court has provided that "[t]he district courts of each judicial district by majority vote of all district judges may make rules governing the internal . . . procedure of the district court . . . and the hearing of all . . . proceedings and motions." I.R.C.P. 1(c). Such rules must be approved and published by this Court as provided in Rule 1(c). Thus, the panel of district judges must adopt procedures pursuant to that rule for purposes of determining whether and how the Cities are to comply with the requirements of the 1994 Order.

## III.
## ADA COUNTY IS NOT ENTITLED TO ATTORNEY FEES.

Ada County requests an award of attorney fees under Idaho Code §§ 12-117 and 12-121. Section 12-117 provides that

> in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117. Section 12-121 provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties . . . ." I.C. § 12-121.

> An award of attorney fees pursuant to the section may only be made when the court "is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation." *Nelson v. Nelson,* 144 Idaho, 710, 718, 170 P.3d 375, 383 (2007) (quoting *Balderson v. Balderson,* 127 Idaho 48, 54, 896 P.2d 956, 962 (1995)) (internal quotation marks omitted). Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the trial court incorrectly applied well-established law. *Nelson,* 144 Idaho at 718, 170 P.3d at 383. Conversely, fees generally will not be awarded when "the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Id.*

*City of Boise*, 147 Idaho at 812, 215 P.3d at 532.

The appeal was not brought or pursued frivolously, unreasonably, or without foundation. Because the Cities have raised a legitimate concern regarding the procedures to be employed under I.C. § 1-1822, we decline to award Ada County its attorney fees. *See City of Boise*, 147 Idaho at 812, 215 P.3d at 532.

## IV.
## CONCLUSION

The appeal is dismissed. No costs or attorney fees are awarded.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

7