# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46741

| | | |
|---|---|---|
| NATHANIEL VALENCIA and EMILY WILLIAMS, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | Boise, February 2020 Term |
| Plaintiffs-Appellants, | ) | |
| v. | ) | Opinion Filed: July 15, 2020 |
| | ) | |
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., an Idaho non-profit corporation; and DOES 1 through 25, inclusive, | ) ) ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Bradley S. Ford, District Judge.

The district court's dismissal due to the lack of a justiciable controversy is <u>affirmed</u>. Costs, but no attorney fees, are awarded to Saint Alphonsus.

Law Offices of Barry L. Kramer, Las Vegas, and Douglas W. Crandall, Boise, attorneys for Appellants. Barry L. Kramer argued.

Duke Law Group Boise and King & Spalding, LLP, Los Angeles, attorneys for Respondents. Keeley Duke argued.

———————————————

BEVAN, Justice

## I. NATURE OF THE CASE

Appellants, Nathaniel Valencia and Emily Williams (collectively "Patients"), are self-pay patients who received emergency medical services at Saint Alphonsus Medical Center—Nampa, Incorporated ("Saint Alphonsus") in 2015. During their respective visits, Patients agreed to pay for "all charges incurred" for services rendered to them. Patients were billed in accordance with

1

Saint Alphonsus' "chargemaster" rates.[1] Patients sought declaratory relief requesting the district court rule Saint Alphonsus was only entitled to bill and seek collection of the reasonable value of the treatment provided to self-pay patients. Saint Alphonsus moved the district court to dismiss the complaint pursuant to Idaho Rule of Civil Procedure ("I.R.C.P.") 12(b)(6). The district court treated the motion to dismiss as a motion for summary judgment pursuant to I.R.C.P. 12(d). Ultimately, the district court granted summary judgment for Saint Alphonsus. Patients timely appealed. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Patients Valencia and Williams received emergency medical services at Saint Alphonsus in Nampa, Idaho. Patients were self-pay patients.[2] During their respective visits, Patients signed Saint Alphonsus' Consent to Medical Care and Patient Services Agreement ("the Agreement"). The Agreement includes a section titled "[f]inancial [p]olicy" which states:

> I agree to abide by the financial policies relating to my payment obligations for medical care received by Patient as such policies are adopted from time to time by Saint Alphonsus and acknowledge that a copy of such policies is available in the registration area and upon request. I further understand and agree that I am financially responsible for payment of all charges incurred which are not paid by any Third-Party Payors (with such charges payable upon discharge unless other arrangements have been made in advance), including, any and all products provided or services rendered to Patient which are not eligible for payment by any Third-Party Payors (e.g., services rendered by health care providers who do not participate with Patient's insurance plan).

By signing the Agreement, Patients acknowledged:

> This form has been explained to me, and I certify that I have read it, understand its contents, and have had an opportunity to have my questions answered. By signing this form, I consent to medical care by [Saint Alphonsus] and to each of the provisions set forth in this form. In the event I do not understand, or consent to, any provision of this form, I will immediately speak with a representative of Saint Alphonsus to ask questions or to register my lack of consent. . . .

---

[1] The chargemaster is a type of document which generally consists of "code numbers, descriptions, and gross charges for each of the thousands of items that are provided to patients upon request." *Limberg v. Sanford Med. Ctr. Fargo*, 881 N.W.2d 658, 659 (N.D. 2016) (using the term Chargemaster); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3rd Cir. 2008) (using Charge Master to refer to the hospital's "index of prices for services, supplies and medications.").

[2] The original complaint states that a self-pay patient is a patient who does not have third-party coverage from a health insurer, health care service plan, Medicare or Medicaid.

Saint Alphonsus later billed Patients for the services rendered totaling $4,259.60 for Valencia and $3,644.85 for Williams. The amounts billed reflected Saint Alphonsus' chargemaster rates. The chargemaster is a document maintained by the billing department at Saint Alphonsus that consists of a schedule of codes, descriptions of service items, and the hospital's gross charges for each item of treatment or service.

Patients sought declaratory relief requesting the district court find Saint Alphonsus was only entitled to bill and seek collection of the reasonable value of the treatment and services provided to self-pay patients. According to Patients, the Agreement was unenforceable because the Agreement contained an "open price" term, or in the alternative, because the Agreement was unconscionable. Patients argued the Agreement contained an "open price" term because the language "all charges incurred" does not refer to Saint Alphonsus' chargemaster rate at which self-pay patients are charged. Alternatively, Patients argued even if the Agreement had no "open price" term, the Agreement was unconscionable because the chargemaster rate far exceeded any reasonable profit margin of Saint Alphonsus. Patients alleged the chargemaster rates were about 2.8 times higher than the actual fees and charges collected by Saint Alphonsus and almost three times the costs of providing treatment. Although Patients sought a declaratory judgment limiting Saint Alphonsus to charging the reasonable value of the services provided to them, Patients did not include the Agreement with their original complaint. The complaint also did not seek a determination of what the reasonable value of any services rendered to them or similarly situated self-paying patients was.

Saint Alphonsus responded by moving to dismiss the case under I.R.C.P. 12(b)(6). In so doing, Saint Alphonsus' attorney provided a declaration in support of its motion to dismiss and attached the Agreement at issue to the declaration. The district court found that Saint Alphonsus' decision to make the Agreement part of the record required the court to treat the motion to dismiss as a motion for summary judgment because the Agreement was not attached to Patients' original complaint. *See* I.R.C.P. 12(d). The district court applied Rule 12(d) by giving "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion" *Id*. It ordered the parties to file supplemental responses and provide any materials relevant to the court's consideration of the motion to dismiss as required by I.R.C.P. 56 for motions for summary judgment. Patients filed no evidence in support of their position, although they did file a supplemental brief in opposition to Saint Alphonsus' motion to dismiss. This left only the bare

3

allegations of Patients' complaint, together with the Agreement, to inform the district court's analysis of the motion.

After hearing arguments on the motion for summary judgment, the district court issued its memorandum and order granting summary judgment for Saint Alphonsus and dismissing the case. Patients timely appealed.

### III. ISSUES ON APPEAL

1. Whether the case presented an actual or justiciable controversy.
2. Whether the district court's grant of summary judgment for Saint Alphonsus was erroneous.

### IV. STANDARD OF REVIEW

"[A] declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists." *Ada Cnty. v. City of Garden City ex rel. Garden City Council*, 155 Idaho 914, 918, 318 P.3d 904, 908 (2014). "Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review." *Westover v. Idaho Cntys. Risk Mgmt. Program*, 164 Idaho 385, 388, 430 P.3d 1284, 1287 (2018) (quoting *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017)). "Similarly, this Court has free review over whether dismissal for lack of jurisdiction was properly granted." *Tucker*, 162 Idaho at 17, 394 P.3d at 60. Questions of justiciability are reviewed under I.R.C.P. 12(b)(1). *See id.*

### V. ANALYSIS

Patients argue the district court erred by finding the pleadings and undisputed facts presented did not establish a justiciable controversy. Patients also allege the district court erred by treating the motion to dismiss as a motion for summary judgment and granting summary judgment for Saint Alphonsus because the Agreement was unenforceable. Patients maintain the Agreement was unenforceable because it contained an "open price" term, or in the alternative, it was unconscionable. For the reasons discussed below, we hold the district court did not err by finding that the bare pleadings and undisputed facts failed to establish a justiciable controversy. As a result, we do not reach the merits of Patients' claims.

**A. The district court properly dismissed Patients' action because Patients lack standing where the judicial relief requested will not redress any claimed injury.**

The district court found the pleadings and undisputed facts presented to it did not establish a justiciable controversy. The court's reasoning included three grounds: (1) Patients lacked standing because their injury was not redressible; (2) the case was not ripe because Saint

4

Alphonsus had not yet demanded payment; and (3) the relief requested would not resolve the case through a decree of conclusive character because a ruling for Patients would not resolve the amount they owed Saint Alphonsus.

Patients argue this ruling was erroneous. Patients maintain they have standing under Idaho's Declaratory Judgments Act ("IDJA") whether they sought a determination of the reasonable value of the services provided or not. Patients also contend that the relief they sought would redress the injury suffered and would resolve the case because a declaration invalidating Saint Alphonsus' billing practices would require Saint Alphonsus to modify the Agreement's language, stop ongoing collection actions, pursue unpaid open accounts on a quantum meruit basis, and discount outstanding balances. For the reasons discussed, we disagree with Patients' contentions and affirm because no actual or justiciable controversy exists.

Under the IDJA, courts have the power "to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." I.C. § 10-1201. Idaho Code section 10-1202 provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Despite the statute's broad statutory reach, this Court has limited the scope of relief provided by the IDJA, holding that it "applies only in a case where an actual or justiciable controversy exists." *Westover*, 164 Idaho at 389, 430 P.3d at 1288 (internal quotations omitted). Thus, a case must present a justiciable controversy to merit consideration under the IDJA. *See id*.

> A controversy in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of hypothetical or abstract character, from one that is academic or moot. *The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests*. It must be a real and substantial controversy admitting of specific relief through decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*.

*Id.* at 390, 430 P.3d at 1289 (emphasis in original) (quoting *Harris v. Cassia Cnty.*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984)).

"Justiciability is generally divided into subcategories—advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." *Id*. at 389, 430 P.3d at 1288 (quoting *Wylie v. State*, 151 Idaho 26, 31, 253 P.3d 700, 705 (2011)). The district court relied on three of these separate subcategories in deciding this case, but we reach our result on one ground only: standing.

"[S]tanding is a preliminary question to be determined by this Court before reaching the merits of the case." *State v. Phillip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015); *see also Shepherd v. Shepherd*, 161 Idaho 14, 19, 383 P.3d 693, 698 (2016) ("[Q]uestions of jurisdiction . . . must be addressed prior to reaching the merits of an appeal."). "The inquiry focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Phillip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194 (internal quotations omitted). As a question of jurisdiction, standing "must be addressed prior to reaching the merits of an appeal." *Taylor v. Maile*, 146 Idaho 705, 709, 201 P.3d 1282, 1286 (2009).

As the district court recognized below, the party bringing a claim has the burden of establishing standing. *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 392, 414 P.3d 205, 214 (2018). "To satisfy the case or controversy requirement of standing, a litigant must allege or demonstrate an injury in fact and a substantial likelihood the judicial relief requested will prevent or redress the claimed injury." *Id*. at 391, 414 P.3d at 213. "This requires a showing of distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct." *Id*. at 392, 414 P.3d at 214.

First, we agree with Patients that they need not "wait until lawsuits against them [are] filed or collection agents beg[i]n harassing them or their credit files [are] red-flagged" to have standing. *See DiCarlo v. St. Mary's Hosp.*, 530 F.3d 255, 263 (3rd Cir. 2008). "The expense is incurred, whether paid or not, at the time the patient enters a hospital with the understanding that he or she is liable for all or part of the charges for the services rendered." *Id*. Thus, in this case, the potential injury—the billing—occurred when Patients had services rendered to them in 2015. The billing practices of Saint Alphonsus—charging self-pay patients chargemaster rates—is what allegedly caused Patients' injury. Patients have thus pled both an injury in fact and a fairly traceable causal connection between the claimed injury and the challenged conduct. *See Haight*, 163 Idaho at 392, 414 P.3d at 214.

6

Even so, to have standing Patients must also show the injury they suffered is *redressible* by a ruling in their favor. *Id.* at 391, 414 P.3d at 213. "Standing's redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged." *Tucker*, 162 Idaho at 24, 394 P.3d at 67. This is part of the "constitutionally based federal justiciability standard," *ABC Agra, LLC v. Critical Access Group, Incorporated,* 156 Idaho 781, 783, 331 P.3d 523, 525 (2014), which requires "a like[lihood] that the injury 'will be redressed by a favorable decision.' " *Phillip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (brackets in original)). Again, the standing inquiry focuses on the party seeking relief, not the issues being litigated. *Id.*

Patients sought declaratory relief requesting the district court find Saint Alphonsus was only entitled to bill and seek collection of the reasonable value of the treatment provided to them and other similarly situated self-pay patients. Still, Patients did not ask the court to determine the reasonable value of any services rendered, nor did Patients provide any evidence supporting their claims. Patients' action is merely hypothetical and any interpretation of the Agreement by this Court would have no practical effect on Patients other than a sense of vindication. *See Westover*, 164 Idaho at 390, 430 P.3d at 1289. Thus, even if Patients established the Agreement contained an "open price" term or was unconscionable, it would remain undetermined what amount Saint Alphonsus could collect from Appellants and whether that amount would differ from the rates already charged based on its chargemaster rates. Stated otherwise, without the court determining the reasonable value of billed services, there can be no assurance that Saint Alphonsus would charge Patients any amount different from what they were already charged. The ruling that they seek would thus result in no affirmative relief. As a result, we affirm the district court on this basis.[3]

**B.      The Patients' arguments on the merits.**

The Patients have failed to establish standing. Therefore, we will not address the merits of Patients' arguments on their substantive claims. *See Philip Morris, Inc.*, 158 Idaho at 883, 354 P.3d at 196 ("Because the State has failed to meet the requirements for standing, we do not address the merits of the State's appeal."); *see also Dupont v. Idaho State Bd. of Land Comm'rs*,

---

[3] While the district court also reached its justiciability decision based on ripeness, we do not reach that ground since it is unnecessary for our decision.

7

134 Idaho 618, 622, 7 P.3d 1095, 1099 (2000) (holding "we decline to address the merits of" Appellants' substantive claims because they have not established standing).

## C.     Attorney fees and sanctions.

This Court on its own initiative may award attorney fees if appropriate. *See Haight*, 163 Idaho at 393, 414 P.3d at 215. Attorney fees may be awarded as sanctions when a party or attorney violates the frivolous filing clause. *Id*. "The frivolous filings clause applies when an argument is not 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Bergeman v. Select Portfolio Serv.*, 164 Idaho 498, 503, 432 P.3d 47, 52 (2018) (quoting I.A.R. 11.2(a)). This Court has "previously interpreted the frivolous filings clause to apply under the same circumstances that warrant awards under Idaho Code section 12-121." *Id*.

Section 12-121 provides that courts "may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Briefs unsupported by legal authority or citation to the record have been considered frivolous by this Court. *See Haight*, 163 Idaho at 393, 414 P.3d at 215 (holding that the appeal was frivolous because appellant's claims "contain[ed] little in the way of legal argument or authority."); *see also Sprinkler Irrigation Co., Inc. v. John Deere Ins. Co., Inc.*, 139 Idaho 691, 698, 85 P.3d 667, 674 (2004) (holding that sanctions were proper when attorney's brief was "virtually void of any citation to the transcript and record relied upon" and thus "failed to conduct a reasonable inquiry that the appeal be well grounded in fact and warranted by existing law as required" by the appellate rules).

Patients' brief here came perilously close to warranting sanctions against counsel. Their brief contained no citations to the record, which was admittedly sparse, no citations to the transcript, and included very few citations to appropriate case law. Yet we decide in our discretion not to award sanctions here. First, because Saint Alphonsus made no request for the same. Even though we can make such a sanction *sua sponte*, we consider the opposing party's request in making this decision. Second, the issues presented here made it past the "frivolous, unreasonable or without foundation" threshold, if just barely.

Even so, we caution attorneys appearing before this Court to adhere to the uncomplicated rules imposed by Idaho Appellate Rule 35(a), which require arguments to be supported by "citations to authorities, statutes and parts of the transcript and record relied upon." I.A.R.

8

35(a)(6). Briefs that fail to adhere to these requirements will not be seen as well-grounded in fact or warranted by existing law as required by I.A.R. 35 and appropriate sanctions upon "the person who signed [the brief], a represented party, or both" may result. *See Sprinkler Irrigation Co.*, 139 Idaho at 698, 85 P.3d at 698; *see* also I.A.R. 11.2.

## VI. Conclusion

We affirm the district court's dismissal due to the lack of a justiciable controversy in this case. We award costs, but no attorney fees, to Saint Alphonsus.

Chief Justice BURDICK, Justices, BRODY. STEGNER and MOELLER, CONCUR.