# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 12-3330

———————————————

Dakota Foundry, Inc.

*Plaintiff - Appellee*

v.

Tromley Industrial Holdings, Inc.

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Pierre

——————————

Submitted: October 23, 2013
Filed: December 9, 2013

——————————

Before BYE, SMITH, and BENTON, Circuit Judges.

——————————

BYE, Circuit Judge.

Tromley Industrial Holdings, Inc. (Tromley) appeals the district court's[1] denial of its motion to compel arbitration. We affirm.

———————————

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

I

Dakota Foundry, Inc., (Dakota) is an iron foundry located in Webster, South Dakota. Tromley is an Oregon business which sells foundry equipment and is the parent company of Kloster Foundry Products (Kloster).

This dispute centers on certain equipment Dakota purchased from the Kloster division of Tromley. Doug Valsvig, the vice president and controller of Dakota, contacted Warren Wilson, a sales representative of the Kloster division, in the Fall of 2009 about Dakota's interest in replacing a sand mixer and related equipment. The practice at the Kloster division was for Wilson to collect information from potential customers and to provide that information to Wilson's co-employee Dale Oakvik, the operations manager for Kloster. Oakvik would prepare an original quote on Kloster stationery, the reverse side of which included the Standard Terms and Conditions of Sale. The Standard Terms and Conditions of Sale used by Kloster contained a binding arbitration clause. Oakvik then would make additional "working copies" of the quote. These working copies would not have the Standard Terms and Conditions of Sale because only the front of the Kloster stationery would be copied. Wilson would handle delivery of the quote package to the potential customer.

In December 2009, Wilson delivered the first set of price quotes to Dakota. The quotes were working copies and did not include on the reverse side the Standard Terms and Conditions of Sale. In pertinent part, the quotes contained: (1) a document entitled "STANDARD PAYMENT TERMS"; and (2) a two-page document entitled "NOTES." The Notes section directed the reader to "[p]lease pay particular attention to the attached copy of our Standard Terms and Conditions of Sale which are an integral part of this quotation." However, no standard terms and conditions of sale were attached. Instead, only the Standard Payment Terms document was included.

On February 24, 2010, Dakota issued a purchase order to Tromley to cover the December 2009 quotes. Between February 2010 and April 2010, Tromley and Dakota exchanged several invoices, none of which contained the Standard Terms and Conditions of Sale. On April 19, 2010, Tromley issued another quotation which stated it was a "revised quotation" and had combined the December 2009 quotes "and all subsequent changes made during our meetings into one, cohesive system quote." This quote contained the same "NOTES" advising Dakota "[p]lease pay particular attention to the attached copy of our Standard Terms and Conditions of Sale which are an integral part of this quotation."

Both parties agree the Standard Terms and Conditions of Sale were never discussed. In fact, Wilson testified he was unaware there was even an arbitration provision in the Standard Terms and Conditions of Sale. Valsvig testified he thought the Notes referring to Standard Terms and Conditions of Sale meant the Standard Payment Terms.

In June and July 2010, several emails were exchanged between Tromley and Dakota. First, on June 7, 2010, Oakvik sent an email containing an addendum to the April 2010 price quotation. This addendum outlined specification changes to certain equipment and added new equipment to the order to accommodate those changes. Also attached was a document entitled "DEPENDABLE FOUNDRY EQUIPMENT COMPANY REDFORD–CARVER FOUNDRY PRODUCTS COMPANY STANDARD TERMS AND CONDITIONS OF SALE."

Dependable Foundry Equipment Company and Redford–Carver Foundry Products Company are two other divisions of Tromley's. Both are owned by Tromley and are sister companies to Kloster. However, Dakota had done no business with either division and had never corresponded with them. Dakota was acquiring its equipment from the Kloster division. The terms and conditions used by those companies are nearly identical to the Standard Terms and Conditions of Sale used by

Kloster. The addendum also contained the provision stating "NOTES: This addendum is bound by the same Terms & Conditions as contained in the original quotation." Dakota responded to this email on June 11, 2010, and accepted the modifications and new equipment. Dakota received substantially similar addenda in email from Tromley dated June 10, June 23, and July 6, 2010. Dakota agreed to these changes.

Valsvig testified he did not believe the terms and conditions attached to the June 7, June 23, and July 6 emails were meant to apply to their agreement. He thought they had been attached by accident and stated Tromley had mistakenly included incorrect attachments in the past, including documents intended for other Tromley customers.

Dakota brought this lawsuit after becoming dissatisfied with the Kloster equipment and operation of the equipment purchased from Tromley. Tromley answered, raising a defense that there was a binding arbitration clause based on the Standard Terms and Conditions of Sale. Tromley initiated an arbitration proceeding in Oregon and filed a motion to compel arbitration.

On January 5, 2012, District Court Judge Charles B. Kornmann denied Tromley's motion because he concluded there were disputed fact issues regarding the parties' agreement. Judge Kornmann later reassigned the case to District Judge Roberto A. Lange. Judge Lange conducted an evidentiary hearing to determine the disputed fact issues Judge Kornmann had identified. Following the hearing, Judge Lange denied the motion to compel arbitration, holding the parties' agreement did not include an arbitration provision.

We review "de novo the denial of a motion to compel arbitration." CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). Where the district court's ruling concerning arbitrability is based on factual findings, we review those factual findings for clear error. PCS Nitrogen Fertilizer, L.P. v. The Christy Refractories, LLC, 225 F.3d 974, 978 (8th Cir. 2000).

A.     The December 2009 and April 2010 Price Quotations

The primary inquiry is whether Tromley's Standard Terms and Conditions of Sale which were referenced but not included in the December 2009 and April 2010 price quotes were incorporated into the agreement between Tromley and Dakota. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626 (1985). "[I]f the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) (quoting Thomson CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995)).

Under South Dakota law[2], "[p]urchase agreements may incorporate by reference another document" and such incorporations are to be given their intended effect. James River Equip. Co. v. Beadle Cnty. Equip., Inc., 646 N.W.2d 265, 269 (S.D. 2002). However, terms will only be incorporated if they "are known or easily available to the contracting parties." Halbach v. Great-West Life & Annuity Ins. Co., 645 F.3d 872, 876 (8th Cir. 2009). In South Dakota, there must be a meeting of the minds or mutual assent on all essential terms for those terms to be included in the

---

[2]The parties agree South Dakota law governs the contract formation issue on appeal.

agreement.  Jacobson v. Gulbransen, 623 N.W.2d 84, 90 (S.D. 2001).  Here, Tromley had the burden of proving, by a preponderance of the evidence, that the Standard Terms and Conditions of Sale were part of the parties' agreement.  Schwartz v. Comcast Corp., 256 Fed. App'x 515, 519 (3d Cir. 2007).  The December 2009 and April 2010 quotes did not include a copy of the Standard Terms and Conditions of Sale even though the NOTES section referred to "the attached copy of our Standard Terms and Conditions of Sale."  The quotes did have a document entitled "STANDARD PAYMENT TERMS" attached, though it did not include an arbitration provision.

Tromley argues physical attachment is not required for finding incorporation by reference.  Indeed, "neither physical attachment nor specific language is necessary to incorporate a document by reference" so long as the incorporating document "clearly evidence[s] an intent that the writing be made part of the contract."  James River Equip., 646 N.W.2d at 269.

Here, Dakota did not have a reasonable opportunity to reject the arbitration provision because it was unaware of the clause.  Dakota's representative Valsvig testified he believed the reference to the "Standard Terms and Conditions of Sale" meant the Standard Payment Terms which were included.  Further, Tromley's own representative, Wilson, testified he did not know the arbitration provision was included in the Standard Terms and Conditions of Sale.

Valsvig's reasonable explanation and Wilson's confusion demonstrates the Standard Terms and Conditions of Sale were not readily available to Dakota and no meeting of the minds occurred as to the arbitration provision.  The parties never discussed arbitration and Tromley's quotes did not include any arbitration provision. The quotes did refer to a "Standard Terms and Conditions of Sale" document as being attached, but the only attached document bearing a similar name was the

"STANDARD PAYMENT TERMS." This does not clearly evidence an intent by the parties that an arbitration provision be made part of the agreement.

Tromley contends Dakota had an obligation to inquire into any unclear or ambiguous terms if it did not know or understand their meaning. In general, a party cannot complain it was ignorant of material facts going to the essence of its contract because its lack of knowledge was attributable to its own lack of initiative or its own indifference. See S. Nat'l Bank of Houston v. Crateo, Inc., 458 F.2d 688, 693 (5th Cir. 1972).

Yet, S. Nat'l Bank does not support Tromley's position. There, the agreement included specific terms which were named but not attached to any forms the offeree received. That contract clearly referenced the extrinsic documents containing the relevant contract terms and included a provision that the contracting party had examined and approved them. Here, by contrast, Dakota was directed to "pay particular attention" to a document which was said to be attached. While in S. Nat'l Bank the contracting party was on notice to refer to documents not attached, here, it cannot be said Dakota was on notice of a document it did not already have in its possession. Because the arbitration provision was not readily available and because Dakota did not have a reasonable opportunity to reject it, Tromley cannot establish the necessary consent to bind Dakota to that provision. See also Masteller v. Champion Home Builders, Co., 723 N.W.2d 561

B.     The June 2010 and July 2010 emails

The next question is whether the emails exchanged between Dakota and Tromley in June and July 2010 constituted an addendum to their agreement which successfully incorporated the arbitration provision. We conclude they did not.

Parties to an existing contract may modify their agreement, provided there is mutual assent, or a meeting of the minds, as to the terms of the modification. Ahlers Bldg. Supply, Inc. v. Larsen, 535 N.W.2d 431, 435 (S.D. 1995). Modifications, like all agreements, "may incorporate by reference another document[.]" James River Equip. Co., 646 N.W.2d at 269. However, terms will only be incorporated if they "are known or easily available to the contracting parties." Halbach, 645 F.3d at 876.

Dakota had entered into its agreement with Tromley's Kloster Division. The emails included attachments entitled "DEPENDABLE FOUNDRY EQUIPMENT COMPANY REDFORD–CARVER FOUNDRY PRODUCTS COMPANY STANDARD TERMS AND CONDITIONS OF SALE." The attachments in no way referred to the Kloster Division. Dakota had no business with either Dependable Foundry Equipment Company or Redford–Carver Foundry Products Company. Dakota dealt exclusively with Tromley's Kloster Division. Further, the June 2010 emails also stated, "[t]his addendum is bound by the same terms and conditions as contained in the original quotation."

Based on that statement, Dakota could reasonably conclude the documents had been attached by mistake and were not intended for them. Tromley had mistakenly attached incorrect documents on emails to Dakota in the past, including documents intended for other Tromley customers. Based on those experiences, it was reasonable for Dakota to ignore the attached Standard Terms and Conditions of Sale which appeared tailored to two divisions with which it had no business. Therefore, applying the same analysis we used in the previous section, we cannot say the parties mutual assented to modify their agreement to include the arbitration provision.

Tromley attempts to rely on the Sixth Circuit's decision in Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007 (6th Cir. 2007). There, Wartsila NSD provided a price quote to Inland Bulk which referred to the "Wartsila NSD terms and conditions" but no terms and conditions were provided at that time. Subsequently,

-8-

Cummins provided a revision which referred to Wartsila NSD terms and conditions. Those terms and conditions included an arbitration provision, but the document header referred to "Wartsila Diesel Group" rather than "Wartsila NSD." The Sixth Circuit found that the arbitration provision was incorporated by reference, concluding the discrepancy was "little more than wordplay." Id. at 1016.

Although Inland Bulk is somewhat instructive, it is not dispositive. There, the discrepancy between the two documents was minimal. Further, the terms were circulated long before the parties entered into their agreement. Here, by contrast, the discrepancy between the two documents is not merely "wordplay." Instead, the documents referred to two completely different divisions of Tromley with unrelated names. In addition, Kloster had a history of mistakenly sending incorrect documents to Dakota. Finally, the Dependable Foundry Equipment Company / Redford–Carver Foundry Products Company Standard Terms and Conditions of Sale document was not provided to Dakota until well after the parties entered into their agreement. While it may have been reasonable for the party in Inland Bulk to realize the mislabeled document was the intended document, we cannot say it was unreasonable for Dakota to conclude the Dependable Foundry Equipment Company / Redford–Carver Foundry Products Company Standard Terms and Conditions of Sale document was not meant for it. Thus, there was no meeting of the minds with regards to the arbitration provision, and Dakota did not have a reasonable opportunity to reject that term.

III

For the foregoing reasons, we affirm the order of the district court.

_____