2016 ND 140

**Dustin LIMBERG, on behalf of himself and all others similarly situated, Plaintiff and Appellant**

**v.**

**SANFORD MEDICAL CENTER FARGO, a North Dakota corporation, Sanford Health Network North, a North Dakota corporation, Sanford North, a North Dakota corporation and Sanford, a North Dakota corporation and**

**Does 1 through 25, inclusive, Defendants and Appellees.**

**No. 20150348.**

Supreme Court of North Dakota.

June 30, 2016.

Barry L. Kramer (argued), Las Vegas, NV, Daniel E. Phillips (appeared), Mike Miller (on brief), and Todd M. Miller (on brief), Fargo, N.D., for plaintiff and appellant.

Vanessa L. Anderson (argued) and W. Todd Haggart (on brief), Fargo, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1]  Dustin Limberg appeals after the district court dismissed his lawsuit against Sanford Medical Center for failing to state a claim for which relief could be granted. On appeal, he argues the district court should not have dismissed the case. Because the district court appropriately dismissed the case, we affirm the judgment.

## I

[¶ 2]  According to the complaint, Limberg sought emergency department care and treatment at Sanford Medical Center Fargo. He did not have insurance and was asked to sign, and did sign, Sanford's "Statement of Financial Responsibility and Release of Information" form ("the contract"). The contract provided:

> I agree that I am financially responsible for all charges related to services provided by Sanford. I also agree to abide by Sanford's payment guidelines. I understand that these guidelines are available for my review, upon request to Sanford. I understand that if I have additional questions about my financial responsibility for Sanford's charges, I may contact Sanford Business Services.

Limberg acknowledges that all patients sign this contract upon admission, regardless of whether they have some form of insurance or are self-pay patients.

[¶ 3]  Limberg explained in his complaint how Sanford calculates gross charges to bill patients for its services. Sanford maintains spreadsheets which include code numbers, descriptions, and gross charges for each of the thousands of items that are provided to patients upon request. Within the hospital industry, these spreadsheets are called Chargemas-

ters. The Chargemaster rates, however, may differ from what Sanford receives as payment from governmental programs, commercial insurers, or HMOs because Sanford's reimbursement rates from these payers are governed by separate governmental regulations, contracts with insurers, or agreements with HMOs. Therefore, patients covered by governmental health care plans, commercial insurance plans, or other privately negotiated fixed fee agreements do not pay the Chargemaster rates. Self-pay patients such as Limberg, however, who are solely responsible for payment, are charged the Chargemaster rate. Limberg was not insured during the visit in this case and therefore was a self-pay patient. Limberg agrees his hospital bill was based on the Chargemaster rates.

[¶ 4] After receiving his bill for the visit, Limberg filed a class action lawsuit seeking a declaratory judgment that Sanford's billing practices were unfair, unconscionable, or unreasonable because the contract contained an "open price" term. He claimed the term "all charges" as referenced in the Sanford contract was ambiguous and he and the class were liable to Sanford only for the reasonable value of the treatment and services provided to them. Sanford moved for dismissal, which the district court granted. Limberg appealed.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Limberg's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 6] On appeal, Limberg argues Sanford's billing practices are unfair, unconscionable, and unreasonable because the contract, signed by all patients seeking

care at Sanford, contains an "open price" term and is ambiguous. Sanford argues the contract contains no "open price" term and the district court appropriately dismissed the case.

[¶ 7] Rule 12(b)(6) of the North Dakota Rules of Civil Procedure provides that a party may move to dismiss a complaint on the ground that such a complaint fails to state a claim for which relief can be granted. A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)(6) tests "the legal sufficiency of the statement of the claim presented in the complaint." *Ziegelmann v. DaimlerChrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556. On appeal from a dismissal under N.D.R.Civ.P. 12(b)(6), "we construe the complaint in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint." *Id.* at ¶ 5. Under N.D.R.Civ.P. 12(b)(6), a "complaint should not be dismissed unless 'it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted.'" *Id.* (quoting *Lang v. Schafer*, 2000 ND 2, ¶ 7, 603 N.W.2d 904). "We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot 'discern a potential for proof to support it.'" *Id.* (quoting *Towne v. Dinius*, 1997 ND 125, ¶ 7, 565 N.W.2d 762). "We review the district court's decision granting judgment on the pleadings under N.D.R.Civ.P. 12(b)(6) de novo." *Brandvold v. Lewis and Clark Public School Dist. No. 161*, 2011 ND 185, ¶ 6, 803 N.W.2d 827.

[¶ 8] Under N.D.C.C. § 9–07–02, "[t]he language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9–07–06.

## A

[¶ 9]   Limberg argues the contract at issue is ambiguous because it contains an "open price" term.   Specifically, he claims the contract requires all patients to pay "for all charges related to services provided by Sanford," though some patients may pay less for services under health care programs than self-pay patients.

[¶ 10]   The contract in this case clearly requires all patients to pay "all charges related to services provided by Sanford." It further obligates the patients to "abide by Sanford's payment guidelines," available for each patient's review upon request to Sanford.   The contract also states, "I understand that unless Sanford or my attending health care provider have agreed with the Payer [identified in the contract as any health care insurance, private or governmental health plan or insurance policy that will pay the charges incurred] to accept payment from the Payer as full payment, I am responsible to pay any charges not paid by the Payer."   Limberg claims this language in the contract is not sufficiently certain and definite regarding a pricing term to be enforceable.

[¶ 11]   Courts throughout the country have addressed allegations identical or similar to those alleged in this case.   In *Nygaard v. Sioux Valley Hospitals & Health System*, 2007 SD 34, 731 N.W.2d 184, several uninsured and non-Medicare/Medicaid patients sued hospitals in South Dakota, seeking damages for being charged the full, undiscounted prices of the hospital's services, which were higher than the prices paid by insured patients or those covered by Medicare or Medicaid. The lower court dismissed the patients' claim. In affirming the lower court's decision to dismiss the claim, the South Dakota Supreme Court examined the contracts at issue and held that although the price of

each hospital service was not listed in the contract itself, the contract included words that fixed an ascertainable fact by which the terms of the contract could be determined, making the contract definite and certain.  *Id.* at ¶ 16.

[¶ 12]   Similarly, in this case, although the exact price of the services provided by Sanford was not listed in the contract itself, the price terms were controlled by language within the contract.   The language obligates patients to pay "all charges related to services provided by Sanford," according to Sanford's payment guidelines.   These set guidelines are made available to all patients, as stated in the contract, and both parties agree Limberg was charged according to the charges Sanford has established in its Chargemaster list.   Many courts across the nation have held that references to the "rates" or the "charges" of a hospital are unambiguous and sufficiently definite to refer to a Chargemaster list for the price term.  *See DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 260 (3d Cir.2008) (adopting the trial court's opinion, holding "all charges and collection costs for services rendered" was not open, but instead referred to the Chargemaster); *Holland v. Trinity Health Care Corp.*, 287 Mich.App. 524, 791 N.W.2d 724, 726 (2010) ("usual and customary charges" for medical care unambiguously referred to the prices stated in the Chargemaster); *Shelton v. Duke Univ. Health Sys., Inc.*, 179 N.C.App. 120, 633 S.E.2d 113, 123–24 (2006) (the "regular rates" language within a contract unambiguously referred to the hospital's Chargemaster list).

[¶ 13]   In addition, the precise language of "all charges" was upheld by the Third Circuit Court of Appeals in *DiCarlo v. St. Mary Hospital*, 530 F.3d 255 (3d Cir.2008), as definite and not open because the language referred to uniform charges in the Chargemaster.   The court in *DiCarlo* also

provided a rationale for using this kind of language in hospital contracts:

> The price term "all charges" is certainly less precise than [the] price term of the ordinary contract for goods or services in that it does not specify an exact amount to be paid. It is, however, the only practical way in which the obligations of the patient to pay can be set forth, given the fact that nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her. Besides handing the patient an inches-high stack of papers detailing the hospital's charges for each and every conceivable service, which he or she could not possibly read and understand before agreeing to treatment, the form contract employed by St. Mary's is the only way to communicate to a patient the nature of his or her financial obligations to the hospital.

*Id.* at 264. *See also Nygaard,* 2007 SD 34, ¶ 17, 731 N.W.2d 184 ("in a hospital setting, it is not possible to know at the outset what the cost of the treatment will be, because it is not known what treatment will be medically necessary").

[¶ 14] Here, Limberg does not argue that the rates contained in the Chargemaster were not sufficiently definite, nor that he was billed rates different from the rates contained in the Chargemaster. He also does not allege that he requested access to the Chargemaster and was denied such access. Furthermore, in the acknowledgment section of the contract, Limberg agreed to the terms of the contract by signing "I have read and understood the information above, and have had the opportunity to ask questions and have them answered to my satisfaction." By signing, Limberg also agreed to the portion of the contract stating "I understand that if I have additional questions about my finan-

cial responsibility for Sanford's charges, I may contact Sanford Business Services." We conclude the language "all charges related to services provided by Sanford" according to Sanford's payment guidelines, as referenced in the contract, is reasonably definite and certain to refer to rates of services set out in Sanford's Chargemaster list. Therefore, there is no "open price" term in Sanford's contract for Limberg to be entitled to a declaratory judgment to that effect. As explained by the district court in its order:

> [T]here is no dispute that the Contract refers to Sanford's pricing guidelines, which are the Chargemasters, and these prices are the same for all individuals. It is only after each individual is charged according to the Chargemasters that this amount is decreased accordingly by any health coverage program benefits.... [N]o ambiguity exists regarding the price term of the Contract, because the base price is the same for each individual pursuant to the Chargemasters. It is only the deductions from the base price that may vary from patient to patient. Thus, the Complaint has failed to allege facts, taken as true, presenting a justiciable controversy upon which the Court can render a declaratory judgment either terminating the controversy or removing an uncertainty.

[¶ 15] Even construing the complaint in the light most favorable to Limberg, it is clear he cannot prove his claim, because there is no "open price" term in the contract. Because the price terms are fixed and can be determined from the language of the contract, Limberg fails to allege a legally sufficient cause of action in his complaint. We conclude the district court appropriately found that Limberg's complaint failed to state a claim upon which relief could be granted.

### B

 [¶ 16] Limberg also argues that because the contract contains an "open price" term, Sanford's billing practices are unfair, unconscionable, and unreasonable, and he should be charged only the reasonable value of the services he received from Sanford.

[¶ 17] As explained above, the price term within the contract is definite and certain, referring to Sanford's Chargemaster rates. The price terms were fixed and could be determined from the language within the contract. "If the language of [a] contract is clear and unambiguous and the intent is apparent from its face, there is no room for further interpretation, and extrinsic evidence may not be used to vary or contradict the terms of the agreement or to create an ambiguity." *Northstar Founders, LLC v. Hayden Capital USA, LLC*, 2014 ND 200, ¶ 46, 855 N.W.2d 614. There are no grounds to impute a reasonable price term into the contract, because a written service contract existed. *See Erickson v. Brown*, 2008 ND 57, ¶ 39, 747 N.W.2d 34 ("A party with an adequate remedy at law generally is not entitled to an equitable remedy."); *Schipper Constr., Inc. v. Am. Crystal Sugar Co.*, 2008 ND 226, ¶ 12, 758 N.W.2d 744 (dismissing a quantum meruit claim because a contract existed between the parties and had not been rescinded).

[¶ 18] The district court appropriately found that Limberg's complaint failed to state a claim upon which relief could be granted.

### III

[¶ 19] We affirm the district court judgment.

[¶ 20] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, S.J., DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 21] The Honorable WILLIAM A. NEUMANN, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.