# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 170

RTS Shearing, LLC,

Plaintiff and Appellant

v.

BNI Coal, Ltd.,

Defendant and Appellee

## No. 20200340

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Matthew D. Kirschenmann (argued) and Ronald J. Knoll (on brief), Fargo, N.D., for plaintiff and appellant.

Zachary R. Eiken, Bismarck, N.D., for defendant and appellee.

**Tufte, Justice.**

[¶1]   RTS Shearing, LLC ("RTS") appeals from a judgment dismissing its action with prejudice after the district court granted summary judgment in favor of the defendant BNI Coal, Ltd. ("BNI"). We conclude the court did not err in granting BNI's motion for summary judgment. We affirm.

I

[¶2]   RTS provides rock crushing services for use on various construction projects. BNI operates a coal mine near Center, North Dakota. As part of its operations, BNI periodically needs crushed rock for various purposes, including road maintenance and construction projects.

[¶3]   In about July 2014, a BNI mine engineer communicated with RTS's chief executive officer about BNI's need for crushed rock. In October 2014, BNI issued an initial purchase order under which RTS was to deliver crushed rock to BNI's mine. BNI asserts RTS did not perform under this initial purchase order, and this purchase order is not at issue. BNI and RTS subsequently discussed having RTS crush rock that had been unearthed at BNI's mine, rather than providing crushed rock to the mine. BNI subsequently issued purchase orders in March 2015 and July 2015, under which RTS would provide rock crushing services in specified amounts to BNI.

[¶4]   Unlike the October 2014 purchase order, the two subsequent single-page purchase orders stated in bold letters: **BNI Coal, LTD's Standard Terms & Conditions apply for a copy of the Terms & Conditions contact BNI Coal, LTD.** The document in the record purporting to contain the standard terms and conditions is entitled TERMS AND CONDITIONS OF CONTRACT and contains the following provision:

> BNI Coal shall have the right to cancel or suspend by written notice, in whole or in part, the Contract. Except in the case of termination for breach, allowance will be made for normal and reasonable expenses incurred by the Seller or Contractor prior to

the notice of cancellation, but BNI Coal will not be liable for any charges or expenses incurred by Seller or Contractor in advance of the normal or reasonable lead time necessary to meet scheduled delivery dates nor for any expenses, charges or liability incurred subsequent to the giving of notice of cancellation.

BNI asserts the Terms and Conditions were available for review upon request to BNI at all relevant times.

[¶5] RTS performed rock crushing services under the March 2015 purchase order beginning in April 2015, and RTS continued performing crushing services after BNI issued the July 2015 purchase order. RTS invoiced BNI for its services under these two purchase orders in the amount of $432,800. RTS's corresponding invoices referenced its respective purchase order. BNI issued payment for the invoiced amount under the two purchase orders, and RTS accepted payment. BNI asserts RTS did not perform any services for which BNI did not pay.

[¶6] RTS eventually left BNI's coal mine without completing the combined quantities stated in the two purchase orders, although rock was still available to crush. In November 2015, RTS inquired when it could return to complete the purchase orders. In January 2016, BNI informed RTS that it was exercising its right to cancel the balance of the purchase orders under the Terms and Conditions.

[¶7] In February 2019, RTS commenced this action against BNI, claiming breach of contract after BNI canceled purchase orders for RTS to provide further rock-crushing services to BNI. BNI asserted it exercised its right to cancel the balance of the purchase orders under the Terms and Conditions that were incorporated by reference in the purchase orders. In January 2020, BNI moved for summary judgment, arguing RTS's breach-of-contract claim failed and the action should be dismissed because the two purchase orders at issue had also incorporated BNI's standard "Terms and Conditions," which allowed for the cancellation.

[¶8] In support of summary judgment, BNI argued that this incorporated provision allowed for BNI's unilateral cancellation and that RTS assented to

2

the terms by not reading the purchase orders or the incorporated Terms and Conditions and by performing and accepting payment under those purchase orders. BNI also argued, alternatively, that no contract existed for want of "mutual assent" and that RTS had no equitable claim because BNI had paid for all services performed. RTS opposed BNI's summary judgment motion.

[¶9] In August 2020, the district court held a hearing on BNI's motion. The court granted summary judgment in favor of BNI and dismissed RTS's action with prejudice. Although the defendant BNI had made alternative arguments in support of its summary judgment motion, the district court in its September 2020 order granting summary judgment only stated: "For the reasons stated in Plaintiff's [sic] brief in support of its motion for summary judgment; IT IS HEREBY ORDERED that Defendant's motion for summary judgment be GRANTED."

[¶10] In October 2020, the district court granted BNI's unopposed motion under N.D.R.Civ.P. 60(a) to correct the court's prior order granting summary judgment in favor of defendant BNI to state: "For the reasons stated in Defendant's brief in support of its motion for summary judgment." The court subsequently entered an order for dismissal with prejudice, and judgment was entered.

## II

[¶11] This Court's standard for reviewing a district court's summary judgment decision is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably

3

be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*G&D Enters. v. Liebelt*, 2020 ND 213, ¶ 5, 949 N.W.2d 853 (quoting *Ceynar v. Barth*, 2017 ND 286, ¶ 10, 904 N.W.2d 469). This Court has also explained that "[i]ssues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts." *Bjerk v. Anderson*, 2018 ND 124, ¶ 10, 911 N.W.2d 343 (quoting *APM, LLLP v. TCI Ins. Agency, Inc.*, 2016 ND 66, ¶ 8, 877 N.W.2d 34).

III

[¶12] RTS argues that the district court erred by entering summary judgment dismissing its complaint for breach of contract. The dispositive issue is whether BNI's separate "Terms and Conditions" were incorporated by reference into the March 2015 and July 2015 purchase orders.

[¶13] Generally, the interpretation of a written contract to decide its legal intent presents a question of law, fully reviewable on appeal. *26th Street Hospitality, LLP v. Real Builders, Inc.*, 2016 ND 95, ¶ 11, 879 N.W.2d 437.

> Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9-07-03; *Lire, [Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433–34 (N.D. 1995)]. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9-07-04; *Lire*, at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9-07-06; *Lire*, at 434. . . . Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. N.D.C.C. § 9-07-09. If the parties' intention in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *Ohio Farmers Ins. Co. v. Dakota Agency, Inc.*, 551 N.W.2d 564, 565 (N.D.1996).

4

*26th Street Hospitality*, at ¶ 11 (quoting *State ex rel. Stenehjem v. Philip Morris, Inc.*, 2007 ND 90, ¶ 14, 732 N.W.2d 720). Additionally, "[s]everal contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together." N.D.C.C. § 9-07-07.

[¶14] The parties on appeal acknowledge that this Court has previously recognized the validity of contracts that incorporated terms by reference in some circumstances. *See Limberg v. Sanford Med. Ctr. Fargo*, 2016 ND 140, ¶ 12, 881 N.W.2d 658. One noted treatise has explained the interpretation of several connected writings:

> As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned. It is not necessary to refer to or incorporate the entire document; if the parties so desire, they may incorporate a portion of the document. However, incorporation by reference is ineffective to accomplish its intended purpose when the provisions to which reference is made do not have a reasonably clear and ascertainable meaning. Additionally, in order *to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms* . . . .

11 *Williston on Contracts* § 30:25 (4th ed. May 2021 Update) (footnotes omitted) (emphasis added); *see also* 17A C.J.S. *Contracts* § 419 ("However, a mere reference to another document is not sufficient to incorporate that other document into a contract; the writing to which reference is made must be described in such terms that its identity may be ascertained beyond reasonable doubt." (footnotes omitted)). Terms will be incorporated only if they "are known or *easily available to the contracting parties*." *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) (emphasis added). Put another way, "[i]ncorporation by reference is proper where [1] the underlying contract makes clear reference to a separate document, [2] the identity of the separate document may be ascertained, and [3] incorporation of the document

5

will not result in surprise or hardship." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) (footnote omitted); *see also G & G Builders, Inc. v. Lawson*, 794 S.E.2d 1, 8-10 (W.Va. 2016) (observing that "to the extent courts have obligated parties to the terms of incorporated documents that were never received, those cases have typically involved transactions between experienced business entities"). Further, "[a]lthough it is clear that whether one agreement has incorporated another has factual components, whether material has been incorporated presents a question of law." 11 *Williston on Contracts* § 30:25.

[¶15] RTS contends that the Terms and Conditions are not a part of the parties' contracts as a matter of law and were specifically not incorporated by reference into the two purchase orders. RTS asserts the purchase orders, when read expressly, attempt to incorporate a collateral document that either "does not exist" or is "styled differently" than what is specifically referenced. RTS argues the Terms and Conditions do not specifically pertain to BNI's rock-crushing purchase orders and contain provisions that are entirely inapplicable to RTS's transaction with BNI. RTS also asserts that extrinsic evidence shows the parties did not discuss the Terms and Conditions and were not aware they existed at the time of contracting. RTS argues the parties therefore lacked the requisite intent to incorporate the Terms and Conditions.

[¶16] RTS argues, alternatively, that the Terms and Conditions materially altered its obligations and remedies and that RTS objected to them when it was made aware of them after BNI's unilateral cancellation. RTS contends, if not decided as a matter of law, that genuine issues of material fact on whether RTS consented to the Terms and Conditions and whether they materially altered RTS's obligations and remedies under the contracts preclude summary judgment. RTS argues enforcement of the Terms and Conditions was a material departure from the parties' course of dealing on the basis of the October 2014 purchase order's failure to include any incorporation clause.

[¶17] BNI responds, however, that the two relevant purchase orders specifically and unambiguously incorporated BNI's Terms and Conditions as a matter of law. BNI asserts the purchase orders' words must mean something

and RTS cannot pick and choose which terms in a contract to give effect. BNI argues that a party can assent to contractual terms, of which it was not aware, when the party fails to read the contract or request to see terms and conditions incorporated into a contract. *See* N.D.C.C. § 9-03-25; *Come Big or Stay Home, LLC v. EOG Res., Inc.*, 2012 ND 91,¶ 11, 816 N.W.2d 80; *Limberg*, 2016 ND 140, ¶ 14. BNI further contends that RTS assented as a matter of law and the material facts are undisputed.

[¶18] Here, in its order granting summary judgment, the district court did not provide any explanation regarding the basis of its decision. The court simply stated that it agreed with "the reasons" stated in BNI's brief in support of its summary judgment motion, even though alternative rationales were argued. While the district court's rationale here is unclear, we will not set aside a correct result even when "the district court relied on a different reason for its decision." *City of Gwinner v. Vincent*, 2017 ND 82, ¶ 12, 892 N.W.2d 598. Nevertheless, whether a document has been incorporated as part of the contract presents a question of law, and summary judgment is appropriate to the extent it is undisputed under these facts that RTS assented to the incorporation of BNI's terms and conditions.

[¶19] Generally, a valid contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration. N.D.C.C. § 9-01-02. Consent must be free, mutual, and communicated by each party to the other party. N.D.C.C. § 9-03-01. Under N.D.C.C. § 9-03-16, consent is not mutual unless the parties all agree upon the same thing in the same sense. It is the words of the contract and the objective manifestations of assent that govern, not the secret intentions of the parties. *See Ehlen v. Melvin*, 2012 ND 246, ¶ 9, 823 N.W.2d 780; *Mountrail Bethel Home v. Lovdahl*, 2006 ND 180, ¶ 11, 720 N.W.2d 630.

[¶20] For acts constituting acceptance, N.D.C.C. § 9-03-20 provides that "[p]erformance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." Section 9-03-25, N.D.C.C, states that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so

7

far as the facts are known or ought to be known to the person accepting." This Court has said N.D.C.C. § 9-03-25 "obviously contemplates extrinsic evidence of conduct after completion of the transaction that suggests a voluntary acceptance of the benefit of the transaction" and that whether one has voluntarily accepted a benefit of a transaction is better suited for trial before a trier of fact. *Golden v. SM Energy Co.*, 2013 ND 17, ¶¶ 16-17, 826 N.W.2d 610. However, we have also explained that "[w]hen reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide." *Molbert v. Kornkven*, 2018 ND 120, ¶ 11, 910 N.W.2d 888 (quoting *A.R. Audit Servs., Inc. v. Tuttle*, 2017 ND 68, ¶ 5, 891 N.W.2d 757).

[¶21] It is undisputed here that, while the March 2015 and July 2015 purchase orders note in bold printing that BNI's "Standard Terms & Conditions" apply and to contact BNI for a copy, RTS did not request or receive a copy of the Terms and Conditions referenced at the time the parties entered into the purchase orders. This Court has consistently held, however, that a party cannot claim ignorance because of a failure to read contractual language. *See, e.g.*, *Alerus Fin., N.A. v. Marcil Grp., Inc.*, 2011 ND 205, ¶ 32, 806 N.W.2d 160. While the two purchase orders reference BNI's "Standard Terms & Conditions" and the Terms and Conditions subsequently provided has a slightly different caption than what is referenced in the purchase orders, this does not raise a genuine issue of material fact. The purchase orders make clear reference to the separate document, and the identity of the separate document is able to be ascertained. Moreover, any claims by RTS of surprise or hardship are unavailing to the extent that RTS did not request a copy of the incorporated terms and conditions referenced in bold on the one-page purchase orders. On the basis of our review, we conclude the two purchase orders clearly and unambiguously incorporated the Terms and Conditions of Contract.

[¶22] RTS's reliance on *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 737 F.3d 492 (8th Cir. 2013), is also unavailing. In *Dakota Foundry*, applying South Dakota law, the court of appeals affirmed the district court's denial of a motion to compel arbitration, concluding the parties had not clearly evidenced an intent that an arbitration provision be part of the agreement. *Id.* at 495-96.

8

The court held Dakota Foundry did not have a reasonable opportunity to reject the arbitration provision because it was unaware of the clause, which was contained in the standard terms and conditions of sale. *Id.* at 496. The parties never discussed arbitration, and Tromley's quote did not include an arbitration provision. *Id.* While the quotes did refer to a "Standard Terms and Conditions of Sale" document *as being attached*, the only attached document bearing a similar name was the "STANDARD PAYMENT TERMS," which did not have an arbitration provision. *Id.* The court concluded the parties' respective explanations and confusion demonstrated the standard terms and conditions of sale were not "readily available" to Dakota Foundry and no meeting of the minds occurred as to the arbitration provision. *Id.* Unlike *Dakota Foundry*, however, the present case does not involve confusion about an incorporated document referenced as "being attached." This case involves a document containing standard terms and conditions as being available on request.

[¶23] In this case, the undisputed facts establish that BNI and RTS, as parties to the purchase orders, had knowledge of and assented to the incorporated terms through their performance under the agreements. It is undisputed that RTS received the two purchase orders at issue with the relevant incorporation clause language in bold and did not ask to see the incorporated Terms and Conditions that were available on request. It is undisputed RTS performed services and invoiced BNI for the services provided under the two purchase orders. It is further undisputed BNI paid RTS the amount invoiced under the purchase orders and RTS accepted that amount. On these undisputed facts we conclude reasonable minds could only conclude that BNI and RTS assented to the contractual terms.

[¶24] On this record, we conclude as a matter of law the undisputed facts establish that both RTS and BNI had knowledge of and assented to the incorporated terms referenced in the purchase orders and that RTS is not excused from the Terms and Conditions merely on the basis of its failure to request and review a copy from BNI before performing under the purchase orders. The district court, therefore, did not err in granting BNI's summary judgment motion.

9

## IV

[¶25] We have considered RTS's remaining arguments and conclude they are either without merit or unnecessary to our decision. The judgment is affirmed.

[¶26] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte