# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 35

Gravity Oilfield Services, LLC,

Plaintiff and Appellee

v.

Valence Natural Gas Solutions LLC,

Defendant and Appellant

### No. 20240184

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Spencer D. Ptacek (argued) and Lawrence Bender (on brief), Bismarck, N.D., for plaintiff and appellee.

Joshua A. Swanson (argued), Fargo, N.D., and Tyler J. Malm (appeared), Bismarck, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Valence Natural Gas Solutions appeals from a district court order granting summary judgment and a judgment in favor of Gravity Oilfield Services. On appeal, Valence argues the district court erred by concluding as a matter of law that the agreement between Valence and Gravity was formed in April 2022 and included Gravity's terms and conditions by reference to Gravity's website. We reverse the judgment.

I

[¶2]   In March 2020, Valence issued a request for proposal for rental of natural gas generators and invited companies who leased generators to submit a price quotation. In April 2020, Gravity submitted a price quotation to Valence by email. Communication ceased until January 2021 when pricing discussions resumed by email over the course of three weeks. In March 2021, Gravity delivered a diesel generator, two natural gas generators, and a parallel electrical distribution panel (the "leased equipment") to Valence.

[¶3]   From April 2021 to April 2022, Gravity sent Valence monthly sales orders and accompanying invoices at the end of each month detailing the rental rates for the leased equipment for that month. Beginning in September 2021, the sales order and invoices, including the April 6, 2022 sales order and invoice, included a provision stating, "For Terms and Conditions refer to: https://gravityoilfieldservices.com/terms-and-conditions." In April 2022, the leased equipment was damaged beyond repair in a fire. In June 2022, Gravity sent Valence an invoice for the replacement cost of the leased equipment. Valence did not pay the invoice.

[¶4]   In February 2023, Gravity commenced this suit alleging Valence was contractually obligated to pay for the damaged equipment. In April 2023, Gravity filed its first motion for summary judgment. The district court denied the first motion for summary judgment, concluding "there are a multitude of disputed material facts, specifically related to contract formation and terms." In

March 2024, Gravity renewed its motion for summary judgment. Following argument, the district court granted the motion for summary judgment.

[¶5]   The district court summarized the issue: "Gravity and Valence agree that a contract existed between them. The parties only dispute when that contract formed and whether it contained Gravity's Terms and Conditions." The court explained:

> Valence argues the parties' contract "was formed by the time of delivery of the [Leased Equipment] in March 2021 based on Valence's general terms and conditions for generator rentals, Gravity's proposal in response to Valence's [RFP], and January 2021 communications between Kyle Wentz and John Vertz."
>
> In support of its argument, Valence cites to N.D.C.C. § 41-02.1-13(1). That statute states that "[a] lease contract may be made in any manner sufficient to show agreement . . ." N.D.C.C. § 41-02.1-13(1). Valence, however, has failed to explain to the Court how the documents on which Valence claims the parties' contract is based are "sufficient to show agreement" between Valence and Gravity. Because N.D.C.C. § 41-02.1-13(1) does not explain what is "sufficient to show agreement," the Court will rely on other principles of law to determine what is sufficient to show agreement.
>
> "It is essential to the existence of a contract that there should be . . . [t]he consent of the parties." N.D.C.C. § 9-01-02. "The consent of the parties to a contract must be . . . [c]ommunicated by each to the other." N.D.C.C. § 9-03-01. "Consent can be communicated with effect only by some act or omission of the party contracting by which the party intends to communicate it, or which necessarily tends to such communication." N.D.C.C. § 9-03-17.
>
> In the case at hand, Valence has provided no evidence that either Valence or Gravity ever communicated consent to any of the documents on which Valence claims the parties' contract is based. Because of this absence of evidence, no reasonable jury could find that the parties' contract is based on these documents and that it formed in March 2021.

(Internal record citations omitted.)

[¶6]   Next, the district court reviewed Gravity's legal theory by comparing the April 2022 sales order and invoice to *RTS Shearing, LLC v. BNI Coal, Ltd.*, 2021

2

ND 170, 965 N.W.2d 40. The district court, quoting *RTS Shearing*, concluded: "[A]s a matter of law the undisputed facts establish that both [Gravity] and [Valence] had knowledge of and assented to the incorporated terms referenced in the [Sales Order and Invoice] and that [Valence] is not excused from [Gravity's] Terms and Conditions merely on the basis of its failure to . . . review a copy [of Gravity's Terms and Conditions] before performing under the [Sales Order and Invoice]." The court concluded as a matter of law, the parties' contract formed in April 2022 and incorporated Gravity's Terms and Conditions by reference. On the basis of Gravity's terms and conditions, Valence was liable for the damaged equipment, and failure to pay for the equipment was a breach of the contract.

[¶7] Judgment and notice of entry of judgment were entered. After Gravity moved for attorney's fees, the district court granted attorney's fees because "attorney fees were allowed by the contract incorporated in Gravity's terms and conditions." Judgment on attorney's fees was entered. Valence appeals.

## II

[¶8] Our standard for reviewing a grant of summary judgment is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly

3

granted summary judgment is a question of law which we review de novo on the entire record.

*Berger v. Sellers*, 2023 ND 171, ¶ 7, 996 N.W.2d 329 (citation omitted).

[¶9]   "A breach of contract is the nonperformance of a contractual duty when it is due. The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." *Berger*, 2023 ND 171, ¶ 21 (internal citations omitted). "The nonperformance of a contractual duty when it is due is a breach of contract." *Trosen v. Trosen*, 2022 ND 216, ¶ 29, 982 N.W.2d 527. "A party asserting a breach of contract must prove the existence of a contract, a breach of the contract, and damages flowing from the breach." *Id.* "The construction of a written contract to determine its legal effect is a question of law and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation." *N.D. Energy Servs., LLC v. Lime Rock Res. III-A, L.P.*, 2024 ND 159, ¶ 12, 10 N.W.3d 591 (citations omitted).

III

[¶10]  The district court stated: "Gravity and Valence agree that a contract existed between them. The parties only dispute when that contract formed and whether it contained Gravity's Terms and Conditions." Valence argues the district court erred by concluding that "Valence has failed to present enough evidence for a reasonable jury to find for Valence" because "Gravity delivered the Equipment to Valence in March 2021." Valence cites N.D.C.C. § 41-02.1-13(1).

[¶11]  Chapter 41-02.1, N.D.C.C., "applies to any transaction, regardless of form, that creates a lease and, in the case of a hybrid lease, it applies to the extent provided in subsection 2." N.D.C.C. § 41-02.1-02(1). "Lease" means "a transfer of the right to possession and use of goods for a term in return for consideration." N.D.C.C. § 41-02.1-03(1)(k). "Lease agreement" means "the bargain, with respect to the lease, of the lessor and the lessee in fact as found in their language or by implication from other circumstances, including course of dealing or usage of trade or course of performance (as provided in this chapter)." N.D.C.C. § 41-02.1-03(1)(l). "Lease contract" means "the total legal obligation that results from the

lease agreement as affected by this chapter and any other applicable rules of law." N.D.C.C. § 41-02.1-03(1)(m).

[¶12] Section 41-02.1-13, N.D.C.C., provides:

1. A lease contract may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of a lease contract.
2. An agreement sufficient to constitute a lease contract may be found although the moment of its making is undetermined.
3. Although one or more terms are left open, a lease contract does not fail for indefiniteness if the parties have intended to make a lease contract and there is a reasonably certain basis for giving an appropriate remedy.

[¶13] Generally, a valid contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration. N.D.C.C. § 9-01-02. Consent must be free, mutual, and communicated by each party to the other party. N.D.C.C. § 9-03-01. "Under N.D.C.C. § 9-03-16, consent is not mutual unless the parties all agree upon the same thing in the same sense. It is the words of the contract and the objective manifestations of assent that govern, not the secret intentions of the parties." *RTS Shearing*, 2021 ND 170, ¶ 19. "Consent can be communicated with effect only by some act or omission of the party contracting by which the party intends to communicate it, or which necessarily tends to such communication." N.D.C.C. § 9-03-17.

[¶14] "Contract law teaches acceptance comes in different forms, sometimes by performance and sometimes by a promise of performance, often depending upon what the offer specifies." *Matrix Properties Corp. v. TAG Invs.*, 2000 ND 88, ¶ 16, 609 N.W.2d 737; *see also* Restatement, Contracts 2d § 50 (1981) (concluding acceptance by performance requires at least part of the offer requests be performed or tendered); 17A Am. Jur. 2d Contracts, § 95 (1991) (stating that "there are various modes of acceptance which are equally conclusive upon the parties"). "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." N.D.C.C. § 9-03-20.

[¶15] "Contracts are construed to give effect to the parties' mutual intent at the time the contract was formed, and if possible, we look to the writing alone to determine the parties' intent." *Langer v. Bartholomay*, 2008 ND 40, ¶ 12, 745 N.W.2d 649. "[U]nless an agreement is completely integrated, evidence of consistent additional terms is admissible." *Id.* ¶ 14. Terms of a lease may not be contradicted by extrinsic evidence but "may be explained or supplemented by: 1. Course of dealing or usage of trade or by course of performance." N.D.C.C. § 41-02.1-11 [U.C.C. § 2A-202].

[¶16] Valence's delivery of the equipment in March 2021, Gravity's use of the equipment, and Gravity's payment of the April 2021 invoice for that earlier delivery and use, show "conduct by both parties which recognizes the existence of a lease contract." *See Hofmann v. Stoller*, 320 N.W.2d 786, 791 (N.D. 1982) ("In a goods transaction, therefore, where there has been delivery of the goods by the seller and acceptance of the goods by the buyer, the bilateral performance of the contract evinces the assent of both parties.") *and Kost v. Kraft*, 2011 ND 69, ¶ 12, 795 N.W.2d 712 (applying *Hofmann* to lease agreements). The parties were operating under an agreement at the time of delivery and acceptance, and during the months following. *See* N.D.C.C. § 41-02.1-13 ("An agreement sufficient to constitute a lease contract may be found although the moment of its making is undetermined.") The parties do not dispute an agreement exists. But the parties' intent on formation of the lease agreement and the terms of the agreement are disputed by the parties. On this record, contract formation is a genuine issue of material fact.

[¶17] In response to the first motion for summary judgment, Valence submitted an affidavit by its president Stewart Wilson, stating: "In confirming the lease arrangement with Gravity, Valence continued utilizing existing Purchase Orders with Gravity containing our General Terms and Conditions for generator rentals. Attached as Exhibit C is a true and correct copy of Valence's Purchase Order General Terms and Conditions." Gravity argues the terms and conditions referenced in the April 2022 sales order and invoice govern the terms of the lease. Valence argues the addition of the terms and conditions in Gravity's April 2022 sales order and invoice are "unilateral (and prohibited) attempts by Gravity to change the agreement." Valence argues, "it was impossible for Valence to

6

consent to terms/conditions that did not exist and were not referenced at the time of contracting."

[¶18] The district court's decision about the terms of the lease agreement significantly relied on *RTS Shearing*, 2021 ND 170. Valence argues this case is distinguishable from *RTS Shearing* because the terms disputed in *RTS Shearing* were referenced in the initial purchase orders exchanged between the parties. The record does not contain a purchase order for the April 2022 rental period. Instead, the district court relies on the April 2022 sales order and invoice.

[¶19] We conclude *RTS Shearing* is distinguishable and does not control here. In *RTS Shearing* we analyzed whether "a document containing standard terms and conditions as being available on request" can be "incorporated as part of the contract." 2021 ND 170, ¶¶ 22, 18. We concluded, "the two purchase orders clearly and unambiguously incorporated the Terms and Conditions of Contract." *Id.* ¶ 21. *RTS Shearing* held that the terms and conditions referenced in a purchase order can attach to the parties' agreement. *Id.* ¶ 22. The parties here are not disputing whether the terms and conditions referenced in the sales order and invoice can be incorporated by reference. The parties instead dispute when the contract was formed and which terms and conditions attached to the agreement.

[¶20] Furthermore, *RTS Shearing* involved purchase orders. Gravity concedes "Valence did not send Gravity purchase orders for the Leased Equipment." In *RTS Shearing*, the purchase orders governing the terms of the agreement were sent before the work commenced. 2021 ND 170, ¶ 5 ("RTS performed rock crushing services under the March 2015 purchase order beginning in April 2015, and RTS continued performing crushing services after BNI issued the July 2015 purchase order."). Purchase orders occur before performance. This case involves sales orders and invoices sent after performance. Here, Gravity sent the sales orders and invoices at the end of each month, after the rental period. The terms and conditions referenced in the April 2022 sales order and invoice, which Gravity argues govern the equipment damaged in the fire, were sent after the fire occurred. The fire occurred on April 8, 2022. On April 29, 2022, Gravity sent Valence a sales order specifying a rental rate for the equipment from April 1, 2022, through April 9, 2022, and an invoice for the same.

7

[¶21] Gravity argues the terms and conditions referenced in the April 2022 sales order and invoice govern the parties' agreement. Valence argues those terms and conditions were not attached to their original agreement, and sought to modify the terms of their existing agreement. The terms and conditions referenced in the April 2022 sales order first appeared on the sales order and invoice in September 2021. The terms and conditions were absent from the April 2021 through August 2021 sales orders and invoices. Valence argues its standard terms and conditions apply, affirming Valence continued "utilizing existing Purchase Orders with Gravity containing [its] General Terms and Conditions for generator rentals." On this record, if or when the terms and conditions referenced in the April 2022 sales order and invoice were incorporated into the parties' agreement, and adopted by both parties, is a genuine issue of disputed fact.

IV

[¶22] We conclude the district court erred by concluding as a matter of law that the agreement between Valence and Gravity was formed in April 2022 and incorporated Gravity's website's terms and conditions into the agreement. We conclude genuine issues of material fact preclude summary judgment on Gravity's breach of contract claim against Valence. Because we reverse the judgment, we also reverse the award of attorney's fees.

[¶23] Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr

8